UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**ASSET FUNDING GROUP, LLC**                             CIVIL ACTION

**VERSUS**                                               NO:      07-02965

**ADAMS & REESE, LLP**                                   SECTION: "B" (4)

## ORDER

Before the Court is a **Motion to Compel More Complete Responses (R. Doc. 15)**, filed by the Defendant, Adams & Reese, LLP ("Adams & Reese"), seeking an order from the Court compelling the Defendant, Asset Funding Group, LLC ("Asset") to fully respond to its interrogatories and document production requests. In opposition, Asset filed an Opposition to Defendant's Motion to Compel More Complete Responses (R. Doc. 19). Thereafter, Adams & Reese filed a Reply Memorandum in Support of Motion to Compel More Complete Responses (R. Doc. 29.) The motion was heard with oral argument on February 13, 2008[1].

Also before the Court is a **Motion for Reconsideration (Prior to Issuance of Formal Order); Motion for Protective Order (R. Doc. 41)**, filed by Adams & Reese, seeking reconsideration of the Court's ruling from the bench on its motion to compel. Asset filed an Opposition to Defendant's Motion for Reconsideration; Motion for Protective Order (R. Doc. 52), and the matter was set for hearing on April 2, 2008.

---

[1] After scrutinizing the record in greater detail, the Court adheres to portions and modifies portions of its oral ruling on the bench as set forth in the Order here.

**I.      Background**

    **A.      Sale-Leaseback Transaction**

On or about April 2005, Asset purchased three properties from Evans Industries, Inc. ("Evans"), located on (1) 1255 Peters Road, Harvey, Louisiana ("Harvey Property"), (2) 10521 Sheldon Road, Houston, Texas ("Houston Property"), and (3) 3950 Highway 30, San Gabriel, Louisiana ("San Gabriel Property")[2]. (R. Doc. 6.) Adams alleges that the properties were purchased by three separate legal entities that operate under Asset's umbrella: (1) AFG Investment Fund 2, LLC ("AFG 2"), (2) Scobar Adventures, LLC ("Scobar"), and (3) HW Burbank, LLC ("HW Burbank")[3]. (R. Doc. 15-2, p. 2.)

In connection with the sale, the parties entered in a leaseback transaction on April 29, 2005. (R. Doc. 6.) Asset–or more specifically, (1) AFG 2, (2) Scobar, and (3) HW Burbank–entered into a Master Lease Agreement ("Master Lease") with Evans, in which Evans leased the Harvey and Houston Properties from May 2005 to May 2025 at $70,000 a month. (R. Doc. 1; R. Doc. 15-5.) According to the Master Lease, AFG 2 and Scobar were "tenants in common owning an undivided interest in the Texas Property." (R. Doc. 15-5, p. 4.) Analogously, HW Burbank leased, and thus owned the Harvey Property. (R. Doc. 15-5, p. 4.)

Asset was represented by at least two law firms during the purchase of the properties, including (1) Jeffer, Mangels, Butler & Marmaro, LLP ("Jeffer Mangels") and (2) Chaffe McCall,

---

[2] Based on the Court's reading of the pleadings, the San Gabriel Property is not at issue in the instant action.

[3] The exact relationship of the entities with Asset is disputed, for some filings suggest that Asset is the parent company of the three subsidiaries, and others suggest that they were partners. (R. Doc. 29, p. 1.) However, Adams & Reese asserts that all three entities share a (1) common business address at 825 South Barrington Avenue, Los Angeles, California and (2) common principal member, Barry Beitler ("Beitler"). (R. Doc. 15-2, p. 2.)

LLP ("Chaffe McCall")[4]. (R. Doc. 19, p. 7.) Adams & Reese did not represent Asset at the time of the sale-leaseback. Adams & Reese suggest that Asset's sale-leaseback counsel purportedly provided Asset with legal advice about the environmental conditions of the properties.

### B. Events of Evans's Bankruptcy

The pleadings indicate that on April 25, 2006, approximately one year after the sale-leaseback, Evans filed for Chapter 11 bankruptcy. (R. Doc. 6.) In April 2006, Asset consulted with Adams & Reese to represent it in Evans's bankruptcy proceedings, and eventually retained Adams & Reese as counsel in May of 2006. (R. Doc. 6.) Asset suggests that unbeknownst to it, when it hired Adams & Reese, Adams & Reese had represented and was concurrently representing Greif Industrial Packaging & Services, LLC ("Greif"), a client whose interest was in conflict with its own. (R. Doc. 6.)

In its amended complaint, Asset contends that in April of 2006, an individual named Brewster Stalter ("Stalter") offered to purchase Evans's assets out of bankruptcy and agreed to be the assignee of and honor all terms and conditions of the Master Lease. (R. Doc. 6.) However, based on Adams & Reese's advice[5], Asset did not pursue the offer. (R. Doc. 6.) Asset alleges that Greif was also interested in purchasing Evans's assets, but not interested in assuming the Master Lease, and Adams & Reese knew of this. (R. Doc. 6.) It is unclear as to the date of Greif's interest, or when Adams & Reese became aware of Greif's interest.

In late May and early June of 2006, Asset sought legal advice from Adams & Reese to bring suit against Jeffer Mangels for its representation during the sale-leaseback transaction. Asset

---

[4] Jeffer Mangels is a law firm based in California and Chaffe McCall acted as Asset's Louisiana counsel during the sale-leaseback negotiations.

[5] However, the pleadings conflict, for Asset purportedly did not retain Adams & Reese until May of 2006.

3

requested an attorney from Jeffer Mangels to forward its legal "files" and "communications" to Adams & Reese for review. (R. Doc. 15-11, Ex. 7.) Jeffer Mangels complied with Asset's request. It is unclear whether any legal action was ever initiated as a result, or if Adams & Reese advised Asset to bring suit against Jeffer Mangels.

According to the amended complaint, two months after Asset's consultation with Adams & Reese regarding its potential malpractice claim, Greif successfully bid upon Evans's assets at an auction on August 11, 2006. (R. Doc. 6.) Oddly, almost one month later, Adams & Reese contends that a potential conflict of interest arose when it learned in a letter dated on September 6, 2006, that Greif sought to reject the Master Lease owned by the Asset entities if Greif won its bid of Evans's assets. (R. Doc. 10.)

Greif ultimately followed through with its expressed intent of refusing to assume the Master Lease, and it consequently entered into negotiations with Asset for a new lease for the Harvey and Houston Properties. (R. Doc. 6; R. Doc. 10.) Adams & Reese represented Asset in the subsequent lease negotiations. (R. Doc. 6; R. Doc. 10.) It is unclear whether Adams & Reese also represented Greif on this transaction. On September 14, 2006, Adams & Reese secured a written conflict waiver from Asset, but not until after Greif won its bid.

Two months later, in November of 2006, Asset confected two lease agreements with Greif for the Harvey and Houston Properties for $60,000 in monthly rental income, which was less than $70,000 monthly rent that was originally agreed to in the sale-leaseback with Evans. (R. Doc. 29-2, Ex. 1; R. Doc. 29-3, Ex. 2.) Asset alleges that Adams & Reese continued to represent both Asset and Greif through December of 2006. (R. Doc. 6.)

Asset filed the subject action asserting that Adams & Reese failed to timely inform Asset of the conflict of interest, and thus provided substandard and negligent representation and breached its fiduciary duties to Asset. (R. Doc. 6.) Asset also contends Adams & Reese failed to pursue proceeds from an insurance policy taken out by Evans on Asset's behalf, for damages sustained on the Harvey Property from Hurricane Katrina. Purportedly, Asset was a certificate holder and mortgagee / loss payee under the policy. (R. Doc. 6.) Asset alleges that the insurance proceeds were consumed in the bankruptcy proceedings, thus eliminating its claim. (R. Doc. 6.) Additionally, Asset alleges that Adams & Reese failed to investigate and advise Asset of the serious environmental problems at the Harvey and Houston Properties which required remediation. (R. Doc. 6.)

### C. Subject Discovery Dispute

Adams & Reese brings the subject motion seeking sufficient responses to its interrogatories, and requests for the production of documents. (R. Doc. 15-7, Ex. 3.) Adams & Reese asserts that Asset's responses are incomplete "in that not a single email among the members and/or managers of AFG [Asset] relating to the Houston or Harvey properties has been produced." (R. Doc. 15-9, Ex. 5.) In the letter, Adams & Reese noted that there was a large volume of email correspondence exchanged during the Evans bankruptcy proceedings, and therefore, Asset's discovery response with no emails, was deficient. (R. Doc. 15-9, Ex. 5, p. 2.)

Adams & Reese specifically seeks email correspondence by Asset's principal members, including emails exchanged by (1) Beitler[6] at "bbeitler@beitler.com," (2) Jeffrey Hayden ("Hayden"), Asset's Managing Member and primary contact during Adams & Reese's

---

[6] As earlier indicated, Beitler was designated as a common principal of AFG 2, Scobar, and HW Burbank.

representation of Asset, at "jhayden@afg-llc.com" and "jhayden@assetfundinggroupllc.com," and (3) Bob Sargent ("Sargent"), the Chief Financial Officer of Beitler Commercial Realty Services and an accountant for Asset at "rsargentjr@aol.com" and his "beitler.com" account[7]. (R. Doc. 15-10, Ex. 6.)  Additionally, Adams & Reese seeks (1) a computation of Asset's alleged damages, (2) Asset's supporting financial documents, including tax and banking records, and (3) a verification of Asset's responses to Adams & Reese's interrogatories.

In opposition, Asset claims that the information sought by Adams & Reese is irrelevant to its malpractice claim because it predates Adams & Reese's representation of Asset or has no bearing on the claims at issue.  Finally, Asset contends that it did not waive its attorney-client privilege with previous counsel, Chaffe McCall, regarding the sale-leaseback transaction.  The Court considers each contested discovery request individually below.

**II.    Standard of Review**

Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials.  *Hebert v. Lando,* 441 U.S. 153, 176 (1979).  Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).  Furthermore, "it is well established that the scope of discovery is within the sound discretion of the trial court." *Coleman v. American Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

---

[7] Adams & Reese identifies these particular email addresses based on email correspondence it has it its possession which lists these addresses as email recipients.

Rule 33 requires a party responding to interrogatories to either answer "separately and fully in writing under oath" or object by stating "the reasons for objection" with "specificity," and otherwise answering "to the extent that it is not object to." Fed. R. Civ. P. 33(b)(3). Similarly, Rule 34(b)(2)(B) requires a party responding to a document production request to "state that inspection and related activities will be permitted as requested, or state an objection to the request, including the reasons." Rule 34(b)(2)(C) further provides that "[a]n objection to part of a request must specify the part and permit inspection of the rest." As to digital documents or other electronically stored information, "[a] party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(2)(E)(i).

An evasive or incomplete response is equivalent to a party's complete failure to respond. Fed. R. Civ. P. 37(a)(4). Furthermore, a party is not excused from a failure to fully respond to a document production request merely because it does not possess the responsive requested materials. *Somerset Marine, Inc. v. Briese Schiffahrts GMBH & Co.*, No. 01-01881, 2002 WL 1933723, at *3 (E.D. La. Aug. 21, 2002). Rather, a party's duty to fully answer implies a duty to make reasonable efforts to obtain the information requested. *Id*.

### III. Analysis

#### A. Emails Sought in Requests for Production 13 and 14 and 19, 20, and 21

Adams & Reese seeks internal emails[8] exchanged by Asset or its three affiliated entities regarding (1) the sale-leaseback transaction and (2) Asset's knowledge of the environmental maladies on its properties. Specifically, in Requests for Production 13 and 14, Adams & Reese

---

[8] While the Requests for Production at issue seek more than emails and electronic documents, Adams & Reese only request the production of relevant emails in its motion to compel.

requests documents regarding the acquisition and subsequent leasing of the (1) Harvey Property and (2) Houston Property to Evans, Greif, or other entities. (R. Doc. 15-7, Ex. 3, p. 12.) Request for Production 19 seeks materials regarding the transfer of assets from HW Burbank to Asset, AFG 2, or other entities. (R. Doc. 15-7, Ex. 3, p. 13.) Finally, Request for Production 21 requests written and electronic documents and materials that relate to the assignment of rents under the Master Lease. (R. Doc. 15-7, Ex. 3, p. 13.) Adams & Reese alleges that (1) the emails are relevant to ascertain the correct party in interest, because Asset did not own or lease the properties but is making claims on those properties, and (2) Asset waived any attorney-client privilege over the emails. It also contends that responsive emails exist, as evidenced by the over 3,000 relevant emails in its own possession.

In response, Asset alleges that it produced all responsive emails from the moment that it retained Adams & Reese's representation onward and refuses to produce emails before Adams & Reese's involvement. It additionally contends that (1) it did not waive its attorney-client privilege over the requested emails and (2) the discovery requests regarding information prior to its relationship with Adams & Reese are burdensome, irrelevant, and do not relate to Adams & Reese's malpractice in its representation during the Evans bankruptcy proceedings.

   **1.**  **<u>Attorney-Client Privilege</u>**

In a diversity action such as this, the Court must apply the state law of attorney-client privilege. Fed. R. Evid. 501. Louisiana Civil Code of Evidence Article 506(B) provides that a client has the privilege to refuse to disclose, and to prevent another person from disclosing, a confidential communication, whether oral, written, or otherwise, made for the purpose of facilitating the rendition of professional legal services to the client. La. Code of Evid. Art. 506(B). A "confidential communication" is not intended to be disclosed to anyone other than "[t]hose whom disclosure is

made in furtherance of obtaining or rendering professional legal services for the client." La. Code of Evid. Art. 506(A)(5)(a).

In Louisiana, attorney-client privilege may be waived in either of the two ways that Adams argues in its motion. First, the privilege is waived when the holder of the privilege "voluntarily discloses or consents to disclosure of any significant part of the privileged matter." La. Code of Evid. Art. 502(A). Second, under the "placing-at-issue" doctrine, a privilege holder waives his privilege if the holder "pleads a claim or defense in such a way that he will be forced inevitably to draw upon a privileged communication at trial . . . to prevail." *Succession of Smith v. Kavanaugh, Pierson & Talley, et al.*, 513 So.2d 1138, 1145 (La. 1987).

### 2. **Waiver of the Privilege by Disclosure**

In the seminal case on attorney-client privilege in Louisiana, the Louisiana Supreme Court strongly delineated between disclosures made pretrial and at trial, primarily focusing on whether the disclosed information will be used at trial. *Smith*, 513 So.2d at 1145 ("A pretrial partial disclosure does not cause the same kind of immediate unfairness as a partial disclosure at trial, because the communication fragment has not yet been introduced into evidence against an opponent. Nevertheless, it may cause comparable unfairness by distorting an opponent's settlement evaluations and obstructing his ability to prepare effectively for trial.") The court stressed the importance of "fairness" in determining the waiver of the privilege and thus focused on whether the disclosed information would be used at trial. The court also cited to the principle of "anticipatory waiver," in which a court may order the discovery of a privileged communication if the court anticipates a waiver from disclosure at trial. *Id.*

Other jurisdictions have held that waiver of the attorney-client privilege based on selective disclosure is inapplicable when "the privilege-holder or his attorney has made extrajudicial disclosures . . . [that] have not subsequently been placed at issue during the litigation." *In re von Bulow*, 828 F.2d 94, 102 (2d Cir. 1987) (indicating that extrajudicial information published in a book regarding the prior representation by the client's attorney with the client's acquiescence only waived privilege as to those conversations that were published, not to unpublished conversations).

Here, Adams & Reese contends that Asset waived any attorney-client privilege over its communications with Adams & Reese when it sought legal advice regarding whether it should pursue a legal malpractice claim against Jeffer Mangels. Earlier, when Asset consulted with Adams & Reese regarding its potential claim, it necessarily had to produce information regarding the sale-leaseback transaction, to which Jeffer Mangels had provided Asset with legal advice.

In response, Asset maintains that it has not waived the attorney-client privilege as to its discussions with Chaffe McCall, another law firm retained by Asset for the sale-leaseback transaction, and E. Howell Crosby ("Crosby") of Chaffe McCall. Furthermore, it alleges that (1) it is not using the privilege as a sword (offensively) and shield (defensively) and (2) it disclosed those communications to Adams extrajudicially, outside of the context of this litigation and on the narrow issue of Jeffer Mangels's representation, and therefore, did not waive the privilege.

First, the Court addresses whether the disputed communications are privileged. Here, Asset sought legal advice from Adams & Reese regarding a potential claim it had against Jeffer Mangels. A client-attorney consultation of this nature is a classic example of a confidential attorney-client communication. To the extent that Asset disclosed any information regarding Chaffe McCall, who also rendered legal services to Asset on the sale-leaseback transaction, those communications also

10

fall under the purview of attorney-client privilege.

The next issue is whether there is a waiver of the content of the emails. The Court finds that no such waiver occurred. To determine whether there is a waiver of the privilege, the Court must look to the subject of the correspondence. The subject of Asset's communications with Adams & Reese relates to Jeffer Mangels's representation, not to the sale-leaseback transaction. Therefore, that Adams & Reese was provided with copies of emails regarding the sale-leaseback at the direction of Asset, its client, does not waive the privilege as to the sale-leaseback. Furthermore, the sale-leaseback transaction–which took place before Adams & Reese's legal involvement with Asset–is not at issue in this case and is therefore irrelevant.

Asset provided Adams & Reese with its communications with Jeffer Mangels for the limited purpose of determining whether it had a malpractice cause of action against Jeffer Mangels. It divulged the information regarding the sale-leaseback transaction at a time when Asset and Adams & Reese stood in different positions in relation to one another, when Asset was a client seeking legal advice from counsel, Adams & Reese. Case law indicates that only the client can waive the privilege, as it belongs to him alone. *U.S. v. Hankins*, 631 F.2d 360, 365 (5th Cir. 1980). Here, Asset did not expressly waive the privilege and its Asset's actions of confiding with Adams & Reese as its legal counsel is inconsistent with waiver of its privilege.

Additionally, the facts here are distinguishable from the traditional malpractice claims where an attorney must necessarily reveal attorney-client communications to defend itself against the client's claims. *See Industrial Clearinghouse, Inc. v. Browning Mfg. Div. of Emerson Elec. Co.*, 953 F.2d 1004, 1007 (5th Cir. 1992). Adams & Reese does not need information regarding the sale-leaseback transaction–in which Asset was represented by entirely different counsel, before it

initiated any relationship with Adams & Reese–to defend itself against the subject action regarding the quality of representation provided during Evans's bankruptcy proceedings.

The legal doctrine of waiver of the attorney-client privilege primarily focuses on fairness. *See Smith*, 513 So.2d at 1145. There is no unfairness implicated by allowing Asset to exercise its privilege over an entirely irrelevant matter, the sale-leaseback transaction. Rather, it is quite the opposite. It is fundamentally unfair for Adams & Reese to use sensitive information shared with it in confidence for the purpose of legal advice, when it is not at issue in these proceedings. If Adams & Reese seeks to discover the corporate interrelationship between Asset and AFG 2, Scobar, and HW Burbank, then it may seek the information from alternative means, rather than from confidential attorney-client communications. Therefore, Adams & Reese's motion to compel the production of emails exchanged with Crosby and other Chaffe McCall attorneys is denied.

### 3. Waiver of the Privilege Under the "Placing-at-Issue" Doctrine

Adams & Reese contends that Asset cannot claim attorney-client privilege over its email communications regarding the environmental condition of the property because it put the environmental conditions at issue, thereby waiving its privilege. Therefore, it alleges that it is entitled to discover whether Asset knew of the environmental hazards on its properties as advised by its previous counsel. In opposition, Asset contends that whether it knew that the property had environmental problems is irrelevant because in the subject action, it contends that Adams & Reese failed to advise it of remediation costs and possible priority positioning that it could have had in Evans's bankruptcy proceedings, not the prior sale-leaseback transaction.

As the Louisiana Supreme Court reasoned, the "placing-at-issue" waiver does not occur unless there has been "misuse by the privilege-holder or unfairness to his opponent." *Id*. at 1146.

Here, it would be unfair to prevent Adams from discovering information on Asset's claim regarding the environmental remediation. In the subject action, there is a question of whether Asset knew of and was advised by other law firms about the historical environmental contamination on the properties. Specifically, in its amended complaint, Asset alleges that Adams & Reese "knew or should have known that severe environmental problems existed at the [Harvey and Houston Properties] leased by Evans, and that such problems would require significant remediation. . . . However, [Adams & Reese] failed to advise [Asset] to properly investigate the environmental issues, including obtaining estimates of remediation costs." (R. Doc. 6, p. 6.)

In light of Asset's broad allegations[9] in its amended complaint, Adams & Reese is entitled to discover information regarding Asset's knowledge of the preexisting environmental condition of the properties. Asset's knowledge of the environmental conditions speaks directly into its state of mind and its comparative fault and Adams & Reese's alleged malpractice. Therefore, the Court concludes that Asset must produce relevant emails speaking to its knowledge of the environmental condition of its properties and the potential remediation costs at the time of the sale-leaseback transaction.

As to the environmental condition of the properties, Asset is requested to consult an technical specialist or other information technology ("IT") specialist no later than thirty (30) days from the signing of this Order to implement a search by which to obtain or recover responsive emails in the personal and accounts of Asset's principals, Beitler, Hayden, and Sargent, and the memory storage of relevant PDAs, laptops, desktops, servers, hard drives, and other electronic devices. Thereafter,

---

[9] Had Asset merely contended that Adams & Reese failed to properly advise it on environmental issues in relation to Evans's bankruptcy proceedings, as it argues in its reply memoranda, then the requested discovery would be irrelevant. However, while Asset attempts to narrow the issue on the subject motion, its complaint *broadly* alleges that Adams & Reese failed to advice it to properly investigate environmental issues.

Asset must also provide certification of its responses, verifying the methods and procedures employed its search for responsive electronic discovery.

### 4. Request for Production 21

Request for Production 21 seeks documents and materials that relate to the assignment of rents under the Master Lease. (R. Doc. 15-7, Ex. 3, p. 13.) However, Adams & Reese does not attach a full copy of the Master Lease for the Court's consideration in the subject motion. Without a copy of the Master Lease, the Court lacks the necessary information to rule on the motion and to determine the scope of inquiry in Request for Production 21. Furthermore, information regarding the assignment of rents under the Master Lease should be readily ascertainable from the Master Lease itself, and not from tangential email correspondence. Therefore, the Court denies Adams & Reese's motion to compel as to Request for Production 21.

### B. Computation of Damages Required in Initial Disclosures and Sought in Interrogatory 18 and Request for Production 12

Adams & Reese seeks a summary of Asset's alleged damages under Rule 26 and Asset's supporting bank records and tax returns to determine the ownership of the properties. Adams & Reese asserts that Asset's tax returns and other financial information are relevant because those documents will reveal the real-party-in-interest. Specifically, in Interrogatory 18 and Request for Production 12, Adams & Reese seeks Asset's computation of damages that it is claiming in the action and all supporting evidence and documentation. (R. Doc. 15-7, Ex. 3, pp. 9, 12.) Adams & Reese contends that Asset was required to disclose the same information in its initial disclosures, but has failed to do so. Of all of the issues upon which the Court ruled upon during the hearing on the subject motion on February 13, 2008, the computation of damages is the only bench ruling which Adams & Reese challenges in its motion for reconsideration.

In response, Asset indicates that its bank statements and tax returns are irrelevant to its claim of malpractice against Adams and "[c]ounsel is in the process of preparing a computation." (R. Doc. 15-8, Ex. 4, p. 8.) It also contends that Adams & Reese should know the damages because Adams & Reese (1) represented Asset on behalf of all three subsidiary entities during Evans's bankruptcy proceedings, (2) negotiated the lease and (3) Asset has already provided the documents upon which damage calculations are based.

In its reply memoranda to Adams & Reese's motions to compel and for reconsideration, Asset asserts that it answered Adams & Reese's discovery requests and provided the damages computation mandated in the initial disclosures with the information available to it. Specifically, Asset argues that it claims $15,360,000 in damages from the "mishandling" of the lease, $240,000 in insurance payments from Lexington's payments to Evans, $1,200,000 in damages for remediation costs on the Houston Property, and $17,771.95, for a running total of $16,817,771.95. (R. Doc. 19, p. 11; R. Doc. 52, pp. 2-3.) Additionally, it alleges that its computation of the environmental remediation costs has yet to be fully ascertained as the remediation process is "underway" and "ongoing." (R. Doc. 19, p. 11.)

First, the Court denies Adams & Reese's motion for reconsideration because Adams & Reese prematurely filed for reconsideration of the Court's bench ruling on February 13, 2008, before the Court had rendered its opinion in a formal order setting forth the parameters of its mandate from the bench. While the Court denies Adams and Reese's motion for reconsideration, the Court concludes Adams & Reese may subsequently bring another motion for reconsideration if Asset's responses are deficient after the issuance of the instant Order.

Under Rule 26, the parties must exchange disclosures in the early stages of litigation. As a part of these initial disclosures, the parties must provide opposing counsel with "a computation of each category of damages claimed by the disclosing party–who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material . . . on which each computation is based." Fed. R. Civ. P. 26(a)(1)(A)(iii). The Rule further provides that "[a] party must make its initial disclosures based on the information then reasonably available to it. A party is not excused from making its disclosures because it has not fully investigated the case." Fed. R. Civ. P. 26(a)(1)(E). Under the Rules, "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Here, Adams & Reese is entitled to a sufficient response to its interrogatory. The belated and incomplete calculation that Asset proffers in its reply pleadings in insufficient. Asset originally responded to Adams & Reese's inquiry into the calculation of damages by indicating that it possessed the information, and the calculation was forthcoming. Thereafter, still without providing Adams & Reese with a calculation, Asset asserted that Adams & Reese had the information before it, and knew or should have known of the damages. Asset's contentions imply that Adams & Reese is to unilaterally calculate Asset's damages based on Asset's discovery documents. The Court disagrees.

Based on the Rules and in response to Adams & Reese's targeted discovery requests, Asset must provide Adams & Reese with a clear summary of its damages it claims in the instant matter. To the extent that Asset cannot respond because it does not have information before it, Asset may

16

provide estimated figures and must timely supplement its discovery responses as information regarding the environmental damages becomes available. Therefore, the Court grants Adams & Reese's motion to compel Interrogatory 18 and Request for Production 12.

### C. Bank Records, Tax Returns, and Financial Information Sought in Requests for Production 22 through 24

In Requests for Production 22 and 23, Adams & Reese requests Asset to produce all documents, records, and other materials that reflect the deposits of rent payments on the Harvey and Houston Properties since April 29, 2005. (R. Doc. 15-7, Ex. 3, p. 13.) Additionally, in Request for Production 24, Adams & Reese seeks all of Asset's federal and state tax returns for the years 2004 through 2006. (R. Doc. 15-7, Ex. 3, p. 13.) Adams & Reese contends that such financial information is necessary to ascertain the relationships between Asset and AFG 2, Scobar, and HW Burbank, and determine which entities are the real parties in interest.

Asset objects to Adams & Reese's request, averring that the financial information is irrelevant because it has no relation to the malpractice and representation issues in the instant action. Furthermore, it asserts that tax returns are sensitive documents, such that their discovery is only warranted when there is (1) relevancy and (2) a compelling need. *See National Gas Pipeline Co. of America*, 2 F.3d 1397, 1411 (5th Cir. 1993) (following case law holding that income tax returns are "highly sensitive documents," and therefore, their discovery requires that the requesting party demonstrate relevancy and a compelling need).

After examining the disputed discovery requests, the Court agrees with Asset's contentions. First, as to Adams & Reese's request for Asset's tax records, the Court finds that Adams & Reese failed to demonstrate that it has a compelling need for the sensitive tax information. Adams & Reese may obtain the same information by propounding alternative discovery inquiries, such as

focused interrogatories specifically inquiring into the corporate interrelationship of Asset and AFG 2, Scobar, and HW Burbank. In fact, in the lease agreements entered into with Greif, Asset is specifically listed as the lessor. The Court finds that the lease agreements provide the same, if not more relevant information as requested in Asset's tax records.

As to Adams & Reese's request for rental payments, the Court concludes that records of rent payments are irrelevant to this malpractice action against Adams & Reese for its representation of Asset, not the three related entities. It is Asset's burden to show that it is the real-party-in-interest, not Adams & Reese's. Therefore, the Court denies Adams & Reese's motion to compel responses to Requests for Production 22, 23, and 24 and sustains Asset's objections on relevancy grounds.

### D.     Attorney's Fees and Costs

The Court concludes that attorney's fees and costs are not appropriate here. Asset advanced legitimate objections to the discovery that needed to be adjudicated and determined by this Court. In fact, this Court upheld Asset's objections to Adams & Reese's discovery regarding relevance and privilege. Therefore, the Court denies Adams & Reese's motion for attorney's fees and other reasonable expenses in bringing this subject motion.

### IV.    Conclusion

Accordingly,

**IT IS ORDERED** that Adams & Reese's **Motion to Compel More Complete Responses (R. Doc. 15)** is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS GRANTED** as to **Interrogatory 18** and **Requests for Production 12, 13, 14, 19, and 20**, in that Asset must provide (1) responsive email communications regarding the environmental condition of the properties before and during Adam & Reese's legal representation and (2) a

computation of its damages and supporting documentation, no later than **fourteen (14) days** from the signing of this Order.

**IT IS FURTHER ORDERED** that Asset consult an technical specialist or other information technology ("IT") specialist no later than **thirty (30) days** from the signing of this Order to implement a search by which to obtain or recover responsive emails in the personal and accounts of Asset's principals, Beitler, Hayden, and Sargent, and the memory storage of relevant PDA, laptop, desktop, server, hard drives, and other electronic devices.  Thereafter, Asset must provide a certificate, verifying the methods and procedures employed its search for responsive electronic discovery.

**IT IS DENIED** as to **Requests for Production 21, 22, 23, and 24**.

**IT IS FURTHER DENIED** as to Adams & Reese's request for attorney's fees and reasonable expenses incurred in conjunction with the instant motion.

**IT IS FURTHER ORDERED** that Adams & Reese's **Motion for Reconsideration (Prior to Issuance of Formal Order); Motion for Protective Order (R. Doc. 41)** is **DENIED** because it was filed prematurely, before the Court issued a formal order setting forth the parameters of its mandate from the bench.  Adams & Reese may reurge its motion if Asset's responses are deficient.

New Orleans, Louisiana, this ___4th___ day of April 2008

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**