U.S. DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ASSET FUNDING GROUP, L.L.C. | * | NO. 07-02965 |
| | * | |
| VERSUS | * | SECTION B (Judge Lemelle) |
| | * | |
| ADAMS AND REESE, L.L.P. | * | MAGISTRATE 4 (Mag. Judge Roby) |

FILED:_____    _____
                                  DEPUTY CLERK

**MEMORANDUM IN SUPPORT OF
OBJECTIONS TO PORTIONS OF THE ORDER
OF THE MAGISTRATE JUDGE SIGNED AND
ENTERED ON FEBRUARY 4, 2008**

MAY IT PLEASE THE COURT:

**I.   FACTUAL BACKGROUND.**

Plaintiff in this matter, Asset Funding Group, L.L.C. ("AFG"), a California limited liability company, alleges in its Complaint that defendant, Adams and Reese LLP ("Adams and Reese"), failed to adequately represent AFG's interest in a bankruptcy matter pending in this district. The bankruptcy matter is entitled *In re: Evans Industries, Inc.*, Docket No. 06-10370, United States Bankruptcy Court for the Eastern District of Louisiana ("Evans Bankruptcy Proceeding").

In its Complaint, AFG alleges that prior to the bankruptcy of Evans Industries, Inc. ("Evans"), AFG acquired from Evans certain immovable property located at 1255 Peters Road, Harvey, Louisiana (the "HarveyProperty") and 10521 Sheldon Road, Houston, Texas (the "Houston Property") by way of a sale-leaseback transaction that was executed on April 29, 2005 ("Sale Leaseback"). In fact, as the Master Lease Agreement, also dated April 29, 2005, evidences, AFG did not itself acquire the Houston Property or the Harvey Property. The properties were actually purchased by three separate legal entities: AFG Investment Fund 2, LLC ("AFG 2"), Scobar Adventures LLC ("Scobar"), and HW Burbank LLC ("HW Burbank"). See Exhibit No. 1, Excerpt of Master Lease Agreement, p. 3.

On April 25, 2006, approximately one year after the sale-leaseback, Evans filed Chapter 11 bankruptcy. On May 3, 2006, AFG retained Adams and Reese to represent it in the Evans Bankruptcy Proceeding. AFG alleges in its Complaint that Adams and Reese: 1) represented Greif, Inc. ("Greif"), another entity involved in the Evans Bankruptcy Proceeding, even though an alleged conflict of interest existed between Greif and AFG; 2) failed to investigate, advise AFG about, and present in the bankruptcy proceeding certain environmental remediation costs associated with the Houston and Harvey Properties; and 3) failed to ensure that certain insurance proceeds allegedly owed to AFG were not consumed during the bankruptcy proceeding. Adams and Reese has answered the Complaint. It denies any fault in its representation of AFG.

AFG alleges that a conflict of interest existed between Greif, the winning bidder in the Evans Bankruptcy Proceeding, and AFG, as owner and lessor of the Houston and Harvey Properties, because AFG wanted the winning bidder to take on the obligations of the Master Lease Agreement for the Houston and Harvey Properties. Greif, as the winning bidder, chose not to bid upon and

acquire Evans' rights under the 20-year Master Lease Agreement, but rather to enter into new, shorter-term leases for both properties. AFG freely negotiated and agreed to these new leases and agreed to compromise issues in the bankruptcy in consideration of receiving substantial lump sum settlement payments from the bankruptcy estate and Greif totaling $550,000. But, AFG alleges that it has suffered damages nevertheless. AFG further alleges that Adams and Reese under-represented AFG because Adams and Reese allegedly was acting under a conflict of interest. Although baseless, these allegations must be explored through discovery.

AFG's allegations concerning the environmental condition of the properties are based on AFG's assertion that Adams and Reese should have done more to investigate the environmental condition of properties and determine the potential remediation costs even though: 1) AFG purchased both properties on April 29, 2005, only one year prior to Evans' bankruptcy filing; 2) AFG was represented by at least three law firms and conducted an extensive due diligence prior to purchasing the properties; 3) AFG rejected one of its counsel's advice to further investigate the environmental condition of the property prior to assuming the role of owner and/or operator; and 4) AFG did not initially request Adams and Reese to make such an investigation.

On the insurance issue, AFG alleges that Adams and Reese should have moved to set aside certain insurance proceeds that were paid to Evans after Hurricane Katrina. Evans was allegedly paid approximately $700,000 as part of its insurance claim, and a portion of that payment, approximately $250,000, was allegedly intended as compensation for property damage. The remaining amount was allegedly intended as compensation for Evans' business-interruption losses. AFG alleges that, as the owner of the Houston and Harvey Properties, it was entitled to the insurance proceeds paid for property damage and that Adams and Reese failed to prevent that money from

being consumed by the bankruptcy estate.  This is a curious claim because it is the on-going subject of litigation against the insurer in the proceedings in this Court numbered and entitled: *Asset Funding Group Investments Fund 2, LLC v. Lexington Insurance Company*, Docket No. 07-cv-09378.

AFG filed suit against Adams and Reese on May 21, 2007.  AFG filed its First Amended Complaint on June 15, 2007. Adams and Reese filed its Answer and Counterclaim on July 23, 2007. Adams and Reese's counterclaim against AFG is for unpaid legal fees owed to Adams and Reese in the amount of $186,962.31, plus contractual and legal interest.

## II. THE OUTSTANDING DISCOVERY AND THE RULING BY MAGISTRATE JUDGE ROBY.

On August 10, 2007, Adams and Reese sent a First Set of Interrogatories, Requests for Production of Documents, and Requests for Admission to AFG.  Exhibit No. 2.  AFG submitted answers and responses to the discovery requests on October 11, 2007.  Exhibit No. 3.  On November 21, 2007, a letter outlining the deficiencies in AFG's answers and responses was sent by counsel for Adams and Reese to counsel for AFG. Exhibit No. 4. On December 7, 2007, a Rule 37 Discovery Conference was held among counsel for Adams and Reese and counsel for AFG to discuss AFG's inadequate answers and incomplete responses.  The issues were not resolved.

Adams and Reese moved for an order compelling AFG to comply with its discovery obligations by providing more complete responses.  The motion was argued on February 13, 2008. On April 4, 2008, Magistrate Judge Roby issued a written Order resolving the several aspects of the motion, granting the motion to compel in part and denying in part.  (R. Doc. 57).  It is noted for

information only that a number of the dates and factual statements made in the background sections of the Order are erroneous as will be shown on the merits.  For example, Magistrate Judge Roby suggests at page 4 of the Order that there was a successful bid upon the Evans assets at an auction on August 11, 2006 and that Adams and Reese only recognized a conflict vis-à-vis its representation of AFG and Greif approximately one month later.  Indeed, a written consent to conflict waiver was signed by AFG on September 14, 2006.  However, the bid referred to by the Magistrate did not occur on August 11, 2006, but, rather, on September 20, 2006.  (USBC Record, Docket No. 06-10370, Doc. No. 390 and No. 400 at p. 3).[1]

**III.    OBJECTIONS.**

   **A.    Documents From Chaffe McCall and Crosby Re: Environmental Condition of the Properties and Remediation Costs As Included Within Request for Production No. 13.**

At page five of the Order, Magistrate Judge Roby correctly ruled as follows:

> Here, it would be unfair to to prevent Adams from discovering information on Asset's claim regarding the environmental remediation . . . .  In light of Asset's broad allegations in its amended complaint, Adams & Reese is entitled to discovery information regarding Asset's knowledge of the preexisting environmental condition of the properties.  Asset's knowledge of the environmental

---

[1] Magistrate Judge Roby cited AFG's first amended complaint for the date of the successful bid of Greif, apparently interpreting the first amended complaint as indicating that the bidding occurred on August 11, 2006.  However, the proceedings on August 11, 2006 were in fact related to the bankruptcy judge's review of bidding procedures and not the bidding itself.

We cite just one example of certain erroneous factual statements without in any way intending to acquiesce in the remaining erroneous factual statements which are not particularly relevant to the instant motion.  Neither will we take up this Court's valuable time by reviewing all of these statements which will serve no purpose at this point.  Finally, we note that no criticism of Magistrate Judge Roby is intended.  Obviously, the merits are not before the Court.  Indeed, the case is in its infant paper discovery phase and as of this date, no depositions have been taken.

>conditions speaks directly into its state of mind and its comparative fault and Adams & Reese's alleged malpractice. Therefore, the Court concludes that Asset must produce relevant emails speaking to its knowledge of the environmental condition of its properties and the potential remediation costs at the time of the sale-leaseback transaction.

Clearly, such documentation would include emails (and should include all documents and correspondence - not just emails) sent by Chaffe McCall/Crosby to AFG regarding the environmental condition of the properties and remediation costs. However, at page 11 of the Order, Magistrate Judge Roby held that AFG did not waive its privilege vis-à-vis documents received from Chaffe McCall/Crosby.

This appears to be inconsistent. In fairness to Magistrate Judge Roby, she may not have intended any inconsistency and may have meant to order production of Chaffe McCall/Crosby documents related to environmental/remediation. If so, this Court's clarification would be welcome. However, it is anticipated that AFG will disagree and continue to insist upon withholding all Chaffe McCall/Crosby documents. The strict rules regarding objections to Magistrate orders precludes doing anything other than asking for this Court's review. The failure to compel production is clearly erroneous and contrary to law.

**B.     Bank Records, Tax Returns, and Financial Information Sought in Requests for Production 22, 23, and 24.**

At pages 17-18 of the Order, Magistrate Judge roby declined to compel production of these documents on the ground that, the "Court concludes that records of rent payments are irrelevant to this malpractice action . . . ." The failure to compel production here too is clearly erroneous and contrary to law.

**IV.   LAW AND ARGUMENT.**

   **A.   Standard of Review.**

The standard of review is set foth in FRCP Rule 72(a): "The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law."

   **B.   Discovery Scope and Limits.**

There is no dispute as to the standard for the scope and limits of discovery in a civil action as set forth by Magistrate Judge Roby. Order at page 6. FRCP Rule 26(b)(1) permits discovery "'regarding any nonprivileged matter that is relevant to any party's claim or defense.' The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials."

   **C.   Reasons Supporting the Objections.**

   **1.   The Chaffe McCall/Crosby Documents Referencing Environmental Condition or Remediation Costs.**

Magistrate Judge Roby acknowledges that documents of precisely this character should be produced and in fact were provided by AFG to Adams and Reese regarding the Houston property. Such documents were sent from AFG's California attorney, Guy Maisnnik pursuant to instructions from AFG dated May 31, 2006 and June 1, 2006. Exhibit 5. In the latter email instruction, AFG explicitly instructed Miasnik to provide Adams and Reese "your **FILES – i.e., our communications, etc . . . .**"

The files were delivered and disclosed communications between AFG and its several counsel involving all aspects of the 2005 sale-leaseback transaction including the environmental condition

7

Case 2:07-cv-02965-ILRL-KWR   Document 63-1   Filed 04/14/08   Page 8 of 13

of the properties. For example, in an April 1, 2005 email, Kay Roska of the Texas law firm of Thompson & Knight provided AFG with a detailed analysis of the Phase I environmental Site Assessment conducted on the Houston property. Exhibit 6. Roska advised the following regarding the Houston property:

> I believe that a subsurface investigation of the areas most likely to have been impacted by releases of Hazardous Substances from these former operations should also be conducted. Without more information, I consider the risk of contamination from these former operations to be a medium to high risk . ... If the client purchases the Property without more environmental due diligence, it would likely be subject to potential liability for at least certain historical contamination and after purchase, any future contamination caused by the current owner/future lessee.

Confirming that Chaffe McCall/Crosby provided similar advice regarding the Harvey, Louisiana property, on March 29, 2005, Hamilton Tran, a California lawyer for AFG who worked with Maisnik, wrote to Howell Crosby of Chaffe McCall stating in part, " . . .And, per my earlier e-mail to Seller's counsel re: the title policy, please also: . . . (vii) Review Environmental phase I Report, attached hereto . . . . Items (vi) and (vii), we typically defer to local counsel on these matters as they are very state specific, otherwise, we would [have] handled ourselves." Exhibit 7.

Despite the express warnings from AFG's counsel, the Sale-Leaseback went forward on April 29, 2005, without further environmental due diligence being conducted by AFG or any of its purported subsidiaries. Now, AFG is taking the unreasonable position in this case that Adams and Reese "knew or should have known" of the "certain historical contamination" on the properties. AFG's pre-bankruptcy knowledge of the environmental condition of the property is relevant not only to AFG's claim that Adams and Reese "knew or should have known" of the environmental contamination, but also to the comparative fault and other defenses of Adams and Reese.


The e-mails and other correspondence from Howell Crosby relating to the environmental condition of the Harvey Property are relevant for the same reasons. If Crosby advised AFG in April 2005 that there were environmental problems with the Harvey Property and AFG failed to disclose that information to Adams and Reese in April 2006, that is certainly relevant to AFG's claim that Adams and Reese "knew or should have known" of environmental problems with the Harvey Property.

AFG provided Adams and Reese with the same information as sought on this motion as applicable to the Houston property, but as concerns the Harvey, Louisiana property, AFG refuses to produce. This position is taken despite the fact, as Magistrate Judge Roby herself wrote at page 13 of the Order, this information is highly relevant to AFG's environmental damage claim and it would be "unfair" to prevent Adams and Reese from discovering information about the claim. By stating in Paragraph 29 of the First Amended Complaint that "A&R failed to advise AFG to properly investigate the environmental issues, including obtaining estimates of remediation costs," AFG has raised a material issue during the course of this judicial proceeding regarding its pre-existing knowledge of the environmental condition of the properties.

We respectfully submit that Magistrate Judge Roby's legal analysis beginning at page 12 of the Order should have and does decide this issue. That analysis is entitled "**Waiver of the Privilege Under the 'Placing-at-Issue' Doctrine.**" In discussing the issue, Magistrate Judge Roby noted at page 11 of the Order the allegation by AFG that Adams and Reese knew or should have known that severe environmental problems existed at the Harvey and Houston properties requiring significant remediation and failed to advise AFG of this. Also, as noted in the Order, "there is a question of

whether Asset knew of and was advised by other law firms about the historical environmental contamination on the properties." *Id*.

In denying the motion to compel communications between Chaffe McCall/Crosby and AFG, Magistrate Judge Roby found that the nearly identical documents provided already from other law firms representing AFG, were provided for a limited purpose – investigation of a possible malpractice claim against one of the law firms. Even though this purpose was referenced in the briefing and argument, this was not the only purpose. The documents provided to Adams and Reese by Maisnik covered all aspects of the 2005 sale-leaseback transaction and were not limited by AFG's instructions to a particular issue. (Exhibit 5). It will be shown that the Master Lease (which preceded Adams and Reese's involvement) was missing certain important provisions. Adams and Reese was looking into this point – investigating the intent of the parties and researching whether a reformation action would lie.

AFG argued at page 10 of its Opposition that it had not placed at issue "the subject matter of those [Chaffe McCall/Crosby] communications . . . ." But Magistrate Judge Roby held that it had done so because, "Assets' knowledge of the environmental conditions speaks directly into its state of mind and its comprative fault and Adams and Reese's alleged malpractice." (R. Doc. 57 at p. 5).

Waiver occurred in this case by virtue of the "placing-at'issue" principle which Magistrate Judge Roby analyzed and applied. Waiver also occurred because AFG is claiming damages related to both the Houston and Harvey properties and has already disclosed relevant attorney communications as to Houston. There can be no reasonable objection to the same disclosure as to Harvey.

## 2. The Financial Documents Reflecting the Handling of Rental Payments

As noted above, even though AFG is the plaintiff in this case seeking damages for lost rentals under the sale-leaseback transaction, AFG is not the lessor in that transaction. Rather, separate, *albeit*, related legal entities are lessors. These separate entities have elected not to sue. Substantial rents were paid to the lessors, and Adams and Reese is seeking production of related documents in the possession of AFG which may reflect information on the handling, such as the depositing, accounting, tax treatment etc., of the rents. The evidence may directly bear on or may lead to other evidence bearing upon confirmation that AFG is not the real party in interest in this action. On the other hand, it may not. But in either event, Adams and Reese is entitled to see the documents.

In denying production, Magistrate Judge Roby stated that Adams and Reese "failed to demonstrate that it has a compelling need for the sensitive tax information" - and - "may obtain the same information by propounding alternative discovery inquiries, such as focused interrogatories specifically inquiring into the corporate interrelationship of Asset and AFG 2, Scobar, and HW Burbank. Order at page 17.[2] It was held (*Id.* at p. 18):

> [T]he Court concludes that records of rent payments are irrelevant to this malpractice action against Adams & Reese for its representation of Asset, not the three related entities. It is asset's burden to show that it is the real-party-in -interest, not Adams & Reese's. Therefore, the Court denies Adams & Reeses motion to compel responses to Request for Production 22, 23, and 24, and sustains Asset's objections on relevancy grounds.

---

[2] At this point in the Order, Magistrate Judge Roby erroneously stated that in the new lease agreements entered into with Greif, "Asset [AFG] is specifically listed as the lessor." However, although AFG is so listed in the typed preamble to each lease, the AFG name was scratched out on the signature and notarial acknowledgment pages and the name of AFG Investment Fund 2, LLC was inserted. Excerpts included as Exhibit 8.

The clear error in this finding is that standing as the real partly in interest as required by FRCP Rule 17(a) is a distinct claim implicitly made in this action by AFG. It is correct that AFG has the burden of proof as to this claim. FRCP Rule 26(b)(1) specifically allows discovery as to a party's claim. How else can a party defending against such a claim prepare a complete defense? The fact that AFG has the burden of proof is no basis at all for denying the discovery. In fact, it is the basis upon which the discovery should be allowed so that the claim might be tested.

Clearly, the Magistrate Judge erred in this ruling.

## CONCLUSION

This Court is requested to review the two rulings brought here for review by the instant motion and to modify and reverse them both specifically ordering the following:

THAT AFG SHALL PRODUCE WITHIN SEVEN DAYS OF THIS COURT'S ORDER:

1. All documents including emails and other communications received from or sent to Chaffe Mccall LLP and/or Howell Crosby referring or relating to the environmental condition of the properties and remediation costs before and during Adam and Reese's legal representation; and

2. The bank records, tax returns and financial information identified and sought in requests numbers 22, 23, and 24.

          MONTGOMERY, BARNETT, BROWN,
          READ, HAMMOND & MINTZ, L.L.P.


          */s/ Daniel Lund*
          Daniel Lund (La. Bar Roll No. 12782)
          dlund@monbar.com
          1100 Poydras Street, Suite 3200
          New Orleans, LA 70163-3200
          Telephone:  (504) 585-7650
          Facsimile:  (504) 200-8940
          Attorneys for defendant, Adams and Reese, LLP