**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

ASSET FUNDING GROUP, LLC                      CIVIL ACTION

VERSUS                                        NO: 07-2965

ADAMS & REESE, LLP                            SECTION: "B" (4)

<u>ORDER AND REASONS</u>

Before the Court is a motion for appeal of Magistrate Roby's April 2008 decision granting in part and denying in part defendant's motion to compel. Rec. Doc. 63. The motion is opposed. Rec. Doc. 71. For the following reasons, the motion is denied in part and granted in part.

**I.   Background**

In April 2005, Asset Funding Group, LLC purchased three properties from Evans Industries, Inc.: (1) 1255 Peters Road, Harvey, Louisiana ("Harvey Property"), (2) 10521 Sheldon Road, Houston, Texas ("Houston Property"), and (3) 3950 Highway 30, San Gabriel, Louisiana. Adams & Reese asserts that the properties were purchased by three separate entities that operate under Asset's umbrella: (1) AFG Investment Fund 2, LLC ("AFG 2"), (2) Scobar Adventures, LLC ("Scobar"), and (3) HW Burbank, LLC. (Rec. Doc. 15-2 at p. 2). The San Gabriel property is not at issue in this suit. In connection with the sale, the parties entered into a leaseback transaction under which Evans leased back the Harvey Property and Houston Property from May 2005 to May 2025 for $70,000 a month. (Rec. Doc. 1; Rec. Doc. 15-5)

1

Asset was represented by two law firms during the sale and leaseback transaction: Jeffer, Mangels, Butler & Marmaro, LLP and Chaffe McCall, LLP.  Adams & Reese did not represent Asset at the time of either the sale or leaseback transactions.

Approximately one year after the sale-leaseback transactions, Evans filed for Chapter 11 bankruptcy. (Rec. Doc. 6)  Adams & Reese was retained as Asset's counsel in the bankruptcy proceedings in May 2006. (Rec. Doc. 6)

During late May or early June of 2006, Asset sought the legal advice of Adams & Reese to bring a legal malpractice suit against Jeffer Mangels for its representation during the sale-leaseback transactions.  Upon Asset's request, Jeffer Mangels forwarded its legal files and communications relating to the sale-leaseback transaction to Adams & Reese for review.  (Rec. Doc. 15-11, Ex. 7)  Included in those communications were emails from Chaffe McCall.

After Asset retained Adams & Reese to pursue a malpractice claim against Jeffer Mangels, Grief, Inc., successfully bid on Evans's assets on September 20, 2006. (USBC Record, Docket No. 06-10370, Doc. No. 390 and No. 400 at p. 3).  Adams & Reese acknowledges a potential conflict of interest arose when it learned in a letter dated September 6, 2006, that Greif, Inc. (also a client of Adams & Reese) sought to reject the Master Lease owned by the Asset entities if Greif won the bid of Evans's assets. (Rec. Doc. 10)

Upon refusing to assume the Master Lease, Greif entered into

negotiations with Asset for a new lease of the Harvey Property and Houston Property.   Adams & Reese represented Asset in the lease negotiations with Greif and a written conflict waiver from Asset was not executed until September 14, 2006.   In November 2006, Asset executed two lease agreements with Greif for the Houston Property and Harvey Property for $60,000 in rent, which was $10,000 less than the monthly rent that was originally established in the Master Lease with Evans.   (Rec. Doc. 29-2, Ex. 1; Rec. Doc. 29-3, Ex. 2)   Asset alleges that Adams & Reese continued to represent both Asset and Greif through December 2006. (Rec. Doc. 6).

Asset filed the subject action asserting that Adams & Reese failed to timely inform Asset of the conflict of interest involving Grief, failed to pursue proceeds from an insurance policy taken out by Evans on Asset's behalf for damages sustained to the Harvey Property from Hurricane Katrina, gave bad advice when it advised Asset to not pursue an offer made by Brewster Stalter in April 2006 to purchase Evans' assets out of bankruptcy and to honor the Master Lease, and failed to investigate and advise Asset on the serious environmental problems at the Harvey Property and Houston Property which required remediation. (Rec. Doc. 6)

Discovery proceeded and Adams & Reese sought production of a number of documents.  After not receiving any e-mail correspondence from Asset, Adams & Reese moved to compel Asset to provide more sufficient responses.  (Rec. Doc. 15-9, Ex. 5 at p. 2) Specifically, the motion sought email correspondence by Asset's

3

principal members; computation of Asset's alleged damages; Asset's supporting financial documents, including tax and banking records; and a verification of Asset's responses to Adams & Reese's interrogatories.

Asset opposed the motion claiming that the information sought was irrelevant because it predates Adams & Reese's representation of Asset and, therefore, has no bearing on the malpractice claims at issue. Asset also contended that it did not waive its attorney-client privilege with sale-leaseback counsel Chaffe McCall or Jeffer Mangels; thus, any e-mails sought by Adams & Resse were not discoverable under the attorney-client privilege. Asset also objected to producing bank records and tax returns because the requests sought privileged, confidential, and irrelevant information which was not likely to lead to the discovery of admissible evidence.

After conducting oral argument, Magistrate Roby ruled as follows:

> (1) the disputed e-mail communications (legal advice from Jeffer Mangels and Chaffe McCall) were subject to the attorney-client privilege because those communications were given to Asset in connection with consultation by these firms with regard to the sale-leaseback transaction; (See p. 10 of Rec. Doc. 57)
>
> (2) no waiver of this privilege occurred when Asset allowed Adams and Resse to review the Jeffer Mangels e-mail communications because such review was done in connection with Adams & Resse's representation of Asset for the limited purpose of determining whether it had a legal malpractice claim against Jeffer Mangels on the sale-leaseback transaction.

4

Asset did not expressly waive its privilege and its actions in confiding these communications to Adams & Resse (its legal counsel on the Jeffer Mangels malpractice claim) is "inconsistent with waiver of privilege." Also, Magistrate Roby found that because the sale-leaseback transaction is not at issue in this case then those e-mail communications are irrelevant.

(3) Next, the Magistrate found that Adams and Reese did not need information regarding the sale-leaseback transaction to defend itself in this action regarding its representation during the bankruptcy proceeding. Further, she found because the information is irrelevant, it would be unfair to allow Adams & Reese to use "sensitive information shared with it in confidence for the purpose of legal advice when it is not at issue in this proceedings." She stated that if Adams & Reese wanted the information on the corporate interrelationship of the parties, they could get this information by an alternate means. Based upon those reasons, the Magistrate found that the Chaffe McCall/Crosby e-mails were not discoverable because

(4) Regarding e-mails relating to the "environmental condition of the property" the Magistrate found that although e-mails were subject to the a/c privilege that privilege was waived by the "placing in issue doctrine." Basically, the Magistrate found it would be unfair to prevent Adams & Reese from discovering information on Asset's claim against it malpractice on the environmental damages to the property because there is a question of whether Asset knew of and was advised by other law firms about the historical environmental contamination of the properties. The Magistrate relied upon the allegations in the amended complaint providing that Adams & Reese is liable for failing to advise Asset to properly investigate the environmental issues, including obtaining estimates of remediation costs. The Magistrate concluded that Asset "must produce relevant e-mails speaking to its knowledge of the environmental condition of its properties

and the potential remediation costs at the time of the sale-leaseback transaction." Rec. Doc. 57 at p. 13.[1]

(5) She also denied the motion on production of assignment of rents b/c the Master Lease was not attached;

(6)She granted Adams & Reese's request for summary of the computation of plaintiff's damages;

(7) She denied Adams & Reese's request for tax returns, bank records and financial information because Adams & Reese failed to demonstrate a compelling need for that information and the same information can be obtained by propounding alternative discovery. She also denied the request for rental payments finding they are irrelevant to the malpractice action. Finally, she rejected Adams & Reese's argument that these documents were necessary to proceed with its defenses to the determining who is the real party in interest.

## I.    LAW AND ANALYSIS

### A.    STANDARD OF REVIEW.

The district court is required to defer to a Magistrate Judge's ruling unless it was clearly erroneous or contrary to law. FRCP 72(a).  Rule 72(a) provides, in pertinent part:

[w]ithin 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order ... The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law.

---

[1]In connection with this ruling, the Magistrate ordered that an IT specialist obtain or recover emails in the personal and accounts of Asset's principals within thirty days.  She did not state that any e-mails were excluded or not discoverable.

Further, 28 USC § 636(b)(1)(A) provides that a "judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."  In applying the clearly erroneous standard, a District Court shall affirm the decision of the Magistrate Judge unless, based on all of the evidence, the court is left with a definite and firm conviction that the magistrate judge made a mistake.  *See Moody v. Callon Petroleum Operating Co.*, 37 F. Supp. 2d 805, 807 (E.D.La. 1999).

**B.   Chaffe McCall/Crosby/ Asset Communications.**

Adams & Reese's motion requested Asset's emails regarding (1) the sale-leaseback transaction and (2) Asset's knowledge of the environmental maladies on its properties.[2]  The Magistrate's Order held that Adams & Reese was not entitled to these communications relating to the sale-leaseback transaction because the attorney-client privilege was not waived by consent of Asset.  However, she held with regard to the environmental issues, the privilege was waived because Asset placed those communications at issue.  The Magistrate did not err in making either of these findings.

**i.   Sale-Leaseback Transaction.**

The client is the holder of the attorney-client privilege, and therefore, the power to waive is his alone.   Waiver includes

---

[2]To the extent that Adams & Reese now request that "all documents and correspondence" in addition to e-mails should be produced, the issue before the Magistrate dealt with e-mails only; thus, the request for documents and correspondence, because not considered by the Magistrate, is not considered by this Court.

conduct which would make it unfair for the client to insist on the privilege thereafter. *Smith v. Kavanaugh*, 513 So. 2d 1138, 1143 (La. 1987). The kind of unfairness justifying waiver of the attorney-client privilege most commonly results from a privilege-holder's abuse of his privilege in three types of situations: (1) partial disclosure at trial; (2) pretrial partial disclosure; and (3) placing privileged communications at issue. *Id.* at 1143-44. In *Smith*, the court stressed the importance of "fairness" in determining the waiver of privilege and focused on whether the disclosed information would be used at trial. *Id.* Waiver of the attorney-client privilege based on selective disclosure is inapplicable when "the privilege-holder or his attorney has made extrajudicial disclosures ... [that] have not subsequently been placed at issue during the litigation." *In re von Bulow*, 828 F.Ed 94, 102 (2d Cir. 1987).

The Magistrate found that to the extent that Asset disclosed any information regarding legal services rendered from Chaffe McCall/Crosby on the sale-leaseback transaction, those communications fell under the attorney-client privilege because such was a consultation between a client and an attorney, which is a classic example of attorney-client communication. The Magistrate then went on to analyze whether the privilege was waived as to the communications surrounding the sale-leaseback transaction and found that no waiver occurred as to the content of those emails. First,

8

she found that the e-mails relating to Jeffer Mangel's representation were privileged and not waived and then she went on the analyze the Chaffe/Crosby communications. The Magistrate found that in both these situations, Asset did not expressly waive its privilege by revealing these communications to its legal counsel Adams & Reese in connection with that firm's representation of Asset in a malpractice action against Jeffer Mangels arising out of the sale-leaseback transaction. This finding is not contrary to law or clearly erroneous as confiding communications to legal counsel is inconsistent with waiver of the attorney/client privilege. *U.S. v. Hankins*, 631 F. 2d 360 (5th Cir. 1980).

**ii.   Environmental Condition/Potential Remediation**.

The Magistrate found that the attorney-client privilege could also be waived by placing at issue a privileged communication. LSA-Evid. Art. 506 C(3); *Sucession of Smith v. Kavanaugh, Pierson & Talley, et al.*, 513 So 2d 1138, 1145 (La. 1987). Because Asset placed the communications relating to the environmental condition of the property at issue, the Magistrate found that Asset waived any privilege relating to such communications entitling Adams & Reese to discovery of those communications. The issue here concerns whether or not the Magistrate's ruling includes the Chaffe/McCall communications. The parties do not dispute that the communications from Jeffer Mangels are to be produced under the Magistrate's Order.

9

Placing-at-issue waiver occurs when a privilege-holder pleads a claim or a defense in such a way that he will be forced inevitably to draw upon a privileged communication at trial in order to prevail.  Placing-at-issue waiver is an application of the anticipatory waiver principle. *Smith*, 513 So. 2d at 1145.  Under the anticipatory waiver theory the court must concern itself solely with whether the privilege holder has committed himself/herself to a course of action that will require the disclosure of a privileged communication. *Id.* at 1146.

Asset's amended complaint alleges that Adams & Reese "knew or should have known that severe environmental problems existed at the [Harvey and Houston Properties] leased by Evans, and that such problems would require significant remediation. ... However, [Adams & Reese] failed to advise [Asset] to properly investigate the environmental issues, including obtaining estimates of remediation costs." (Rec. Doc.  at p. 6).  Relying on these allegations, the Magistrate found that Adams & Reese is entitled to discover information regarding Asset's knowledge of the preexisting environmental condition of the properties and, therefore, are entitled to the e-mails regarding Asset's knowledge.

Asset's knowledge of the environmental conditions speaks directly to its state of mind and its comparative fault as well as the claims that Adams & Reese's acted improperly.  Accordingly, the Magistrate correctly concluded that Asset must produce emails

speaking to its knowledge of the environmental condition of the properties and the potential remediation costs at the time of the sale-leaseback transaction and pre-bankruptcy.  The Magistrate's Order does not exclude e-mail communications from Chaffe McCall/Crosby regarding environmental condition and potential remediation costs.  The Order specifically states that "relevant e-mails speaking to [Asset's] knowledge of the environmental conditions of its properties and the potential remediation costs at the time of the sale-leaseback transaction must be produced."  She also ordered that an IT specialist search the personal and business accounts of Asset's principals and the memory storage of the relevant computer devices to obtain the information.  The Magistrate did not limit this production in any way.  Although the Magistrate, earlier in her opinion, discussed Asset failure to waive its attorney-client privilege with regards to the sale-leaseback transaction, that ruling had no bearing on the production of emails from Chaffe McCall/Crosby relating to environmental condition and remediation costs and as such production was premised upon a separate waiver theory.  The Magistrate's ruling does not limit such production to only non Chaffe McCall/Crosby emails.  The Magistrate did not err in her findings.

   **C.   Bank Records and Tax Returns.**

   Magistrate Roby found that Adams & Reese failed to demonstrate that it has a compelling need for the sensitive tax information and

that the same information may be obtained by propounding alternative discovery requests, such as focused interrogatories specifically inquiring on the corporate relationship between Asset and AFG 2, Scobar, and HW Burbank. Further, the Magistrate found that since the burden in proving the real party in interest under FRCP 17 falls to Asset, then Adams & Reese has no right to the review the financial documents.

Adams & Reese requested the following documents in its Requests for Production 22 through 24: (1) all bank records reflecting deposit of rent payments on the Harvey property since April 29, 2005; (2) all bank records reflecting the deposit of rent payments on the Houston Property since April 29,2005; and (3) Asset's federal and state tax returns for the years 2204, 2005, and 2006.

Income tax returns are highly sensitive documents which courts are reluctant to order routine disclosure as a part of discovery. *Natural Gas Pipeline Co. of America v. Energy Gathering, Inc*., 2 F. 3d 1397, 1411(5th Cir. 1993)(citations omitted). This is because not only are the taxpayer's privacy concerns at stake, but unanticipated disclosure of our federal tax laws given the self-reporting, self-assessing character of the income tax system. *Id*. For the court to order disclosure of tax returns, it must find "that the returns are relevant to the subject matter of the action" and "that there is a compelling need for the returns because the

information contained therein is not otherwise readily obtainable." *Mohnot v. Bhansali*, 2001 WL 515242 (E.D. La. 2001)(citing *S.E.C. v. Cymaticolor Corp.*, 106 F.R.D. 545, 547 (S.D.N.Y.1985)).

The Magistrate found that there was no compelling reason to produce the sensitive tax information and she correctly did so. Adams & Reese must show both a compelling need and relevancy in order to get access to Asset's tax documents. It failed in meeting the compelling need prong. The Court agrees with the Magistrate that the information sought could be obtained by alternate discovery methods. The Magistrate's decision on this issue is not clearly erroneous nor contrary to law. Any discussion of relevancy of the tax returns is pretermitted as Adams & Reese has not shown a compelling need.

The Magistrate's Order groups the bank documents and rental payment information into one group and found these documents should not be produced because they are irrelevant. In so finding, the Magistrate stated that it is the burden of Asset to prove that it is a real party in interest under FRCP 17, not Adams & Reese's.

Rule 26(b)(1) provides, in pertinent part, that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense-including the existence, description, nature, custody, condition or location of any documents or other tangible things..." The bank documents and rental payment information are sought by Adams & Reese to determine

its defense to the claim that Asset is the real party in interest to assert a claim against it for malpractice. One of the allegations in the malpractice action is that Adams & Reese failed to adequately represent Asset interests in the bankruptcy proceedings relative to the Master Lease and the later lease entered into by Grief. It is Adams & Reese's position that neither lease was entered into by Asset but rather was entered into by separate entities. Asset contends that the lease agreement with Grief was executed on its behalf and was less than favorable. Clearly, the parties dispute who is the executing party to the lease agreements and the proper party to sue. While the lease agreements themselves would provide insight into the real party in interest, so would documents relating to whom the rental payments were made. Such documents, at the very least, are reasonably calculated to lead to the discovery of admissible evidence on the claim related to whether or not Asset is the real party at interest.

Rule 26 provides that discovery can be had on any matter relevant to a party's claims or defense. The bank documents insofar as they show to whom rental payments for the properties were made is likely to lead to the discovery of evidence on Adams & Reese's defense to Asset's claim and therefore, is discoverable. The Magistrate erred in denying the motion to compel on this issue. Asset shall produce to Adams & Reese bank records or other documents providing evidence as to what entity or entities the

14

rental payments on the Harvey and Houston properties were made from April 29, 2005 to present.  To the extent that the documents produced consist of bank records, all other information contained within shall be redacted.  Only the name(s) of the entity or entities paid, the name(s) of the entity or entities paying and the amounts shall be produced.  The Magistrate's Order is thereby modified as to the ruling on bank records.

Accordingly,

**IT IS ORDERED** that defendant's motion (Rec. Doc. 63) is **granted in part** and **denied in part**.

New Orleans, Louisiana, this 9th day of September, 2008.

**IVAN L. R. LEMELLE**
**UNITED STATES DISTRICT JUDGE**

15