UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ASSET FUNDING GROUP, LLC                       CIVIL ACTION

VERSUS                                         NO. 07-2965

ADAMS & REESE, LLP                             SECTION B(4)

ORDER AND REASONS

Before the Court is Defendant's Motion for Appeal of Magistrate Judge Order (Rec. Doc. No. 165). Defendant, Adams & Reese, LLP ("Adams & Reese"), appeals in part Magistrate Judge Roby's ruling made during the hearing on August 27, 2008, and the Judge's Order (Rec. Doc. 145) filed on September 8, 2008, reflecting her ruling at that hearing. After review of the pleadings and applicable law, and for the reasons that follow,

**IT IS ORDERED** that the Magistrate Judge's Order is **AFFIRMED**.

DISCUSSION

Adams & Reese claims that a number of communications are protected by the attorney-client privilege between Adams & Reese's attorneys and Adams & Reese's in-house counsel. Adams & Reese maintains that it is the client who sought legal advice from its designated in-house counsel, Martin Stern and Don McKinney. However, Magistrate Judge Roby has yet to rule upon Defendant's assertion of the attorney-client in-house counsel

privilege. (Rec. Doc. 149 at 20-22). This is a case of first impression in Louisiana, therefore federal court opinions will be used as guidepost.

Adams & Reese asserts attorney-client privilege in relation to communications between Adams & Reese attorneys and Adams & Reese's in-house counsel. The purpose of the attorney-client privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981). Protected are the communications between an attorney acting in his professional capacity and a client where the communications are intended to be confidential, and the confidentiality is not waived, expressly or by implication. *Valente v. PepsiCo, Inc.*, 68 F.R.D. 361, 367 (D.Del. 1975). Federal courts have held that "[w]here the fiduciary has conflicting interest of its own, to allow the attorney-client privilege to block access to the information and bases of its decisions as to the persons to whom the obligation is owed would allow the perpetration of frauds." *Id*. To establish attorney-client privilege, several elements must be proven: (1) the holder of the privilege is or sought to become a client; (2) the communication was made to an attorney or his subordinate in a

professional capacity; (3) the communication was made outside the presence of strangers; (4) the communication was made to obtain a legal opinion or services; and (5) the privilege has not been waived. *Cacamo v. Liberty Mutual Fire Ins. Co.*, 1999-1421 (La.App.4 Cir. 10/10/01). It is the defendant's burden to prove the applicability of the privilege.

Defendant relies on the United States Supreme Court decision in *Upjohn*. In *Upjohn,* the Court held that communication between corporate employees and the corporate in-house counsel were protected by the attorney-client privilege. *Upjohn*, 449 U.S. 383. In *Upjohn*, a corporate defendant asserted attorney-client privilege when the Internal Revenue Service sought documents between corporate employees and the corporation's in-house counsel referring to the possible illegality of payments. *Id.* at 387, 394. The communications at issue were made up by Upjohn employees at the direction of corporate supervisors in order to obtain legal advice from counsel; employees were aware that they were being questioned so that the corporation could obtain advice. *Id.* at 394. The Court decided only the case before it and noted that the recognition of attorney-client privilege should be determined on a "case-by-case" basis. *Id.* at 396.

Adams & Reese claims that the attorney-client relationship is analogous to that between a corporation and its in house corporate counsel. Communication by corporate directors, officer or employees to in-house corporate counsel for the purpose of obtaining legal advice for the corporation may be protected by the attorney-client privilege. *Id.* at 389-397.

The court in *In re Sunrise Securities Litigation*, 130 F.R.D. 560, 595 (E.D.Pa. 1989), stated "that it is possible in some instances for a law firm, like other business or professional associations, to receive the benefit of the attorney client privilege when seeking legal advice from in house counsel." The court went on to note on rehearing, that "a law firm's communication with in house counsel is not protected by the attorney client privilege if the communication implicates or creates a conflict between the law firm's fiduciary duties to itself and its duties to the client seeking to discover the communication." *Id*. at 597. The court found that the privilege did not apply because the in-house consultation created a conflict of interest.

Adams & Reese cites a number of cases subsequent to *Sunrise* in which the privilege was held applicable to in-house consultations by law firms. *See United States v. Rowe*, 96 F.3d 1294 (9th Cir. 1996); *Hertzog, Calamari & Gleason v. Prudential*

*Insurance Company of America*, 850 F.Supp, 255 (S.D.N.Y. 1994); *Lama Holding Co. v. Shearman & Sterling*, 1991 WL 115052 (S.D.N.Y 1991).

In *Rowe*, a law firm senior partner assigned associates at the firm to investigate the conduct of another of the firm's attorneys in handling client funds. When the government attempted to question the associates in connection with the grand jury investigation, the law firm claimed attorney-client privilege. After the trial court ordered the associate to testify, the court of appeals held that the privilege could apply to intra-firm communications.

In *Nessie v. Pittman*, 206 F.R.D. 325 (D.D.C. 2002), the District Court for the District of Columbia held that communications between an attorney and his firm's in-house counsel were subject to attorney-client privilege when they concerned a claim for legal malpractice brought against the firm. *Id.* at 330. The court relied on *Upjohn*, stating that *Upjohn* "extends the privilege's application to any conversations with persons employed by an organization that advances the attorney's responsibility as an advocate to the organization, even though the lawyer is speaking to those people not to give them legal advice or representation but to advance the lawyer's

5

obligation to the organization by which they are both employed." *Id.*

While the cases that Defendant relies on recognize the attorney-client privilege for intra-firm communications, none of these cases addressed whether the privilege can be asserted against the firm's current client. *See Rowe*, 96 F.3d at 1296 (privilege asserted in response to governmental subpoena in criminal investigation); *Hertzog*, 850 F. Supp. At 255 (privilege applicable to communications during litigation where in-house counsel represented firm in said litigation); *Lama Holding*, 1991 WL 115052 at *1 (documents were privileged because Sherman & Sterling was no longer employed by the plaintiffs). Asserting the privilege against a current client seems to create an inherent conflict against that client.

Asset cites to cases that also address the in-house counsel privilege. The court in *Koen Book Distributors v. Powell, Trachtman, Logan Carrle, Bowman & Lombardo, P.C.,* 212 F.R.D. 283 (E.D.Pa. 2002) addressed the issue of whether the privilege shields documents from discovery by a client when one lawyer seeks legal advice from another lawyer in their law firm concerning that client which has threatened to initiate a legal malpractice action against the lawyer or the firm. *Id.* at 284. The court noted that the documents contained discussion about

6

how best to position the firm in light of a possible malpractice action. *Id.* at 286. The court held that the documents were not protected by the attorney-client or work-product privileges and ordered the documents to be produced. *Id.* at 287.

In *In re SONICblue Inc.*, 2008 WL 170562 (Bkrtcy.N.C.Cal. 2008)(slip copy), the court noted when a law firm chooses to represent itself, it runs the risk that the representation may create an impermissible conflict of interest with its current clients. *Id.* at *9. The law firm's right to claim privilege must give way to the interest in protecting current clients who may be harmed by the conflict. *Id*. As a result, the court held that a law firm cannot assert the attorney-client privilege against a client when the communications the law firm seeks to protect arose out of self-representation that creates an impermissible conflicting relationship with that outside client. *Id.*

Similarly, in *Thelen Reid & Priest, L.L.P. v. Marland*, 2007 WL 578989 (N.D.Cal. 2007), the issue was whether the attorney-client privilege applied where the law firm was attorney to both an outside client and to itself. The defendant law firm in that case represented two clients with conflicting interests. When one client sued the law firm, the law firm asserted the attorney-client and work product privileges over documents. The

court held that the law firm had to produce any communications discussing known conflicts in its representation of the plaintiff client or other circumstances that triggered the law firm's duty to advise the plaintiff client and obtain the client's consent to the conflict of interest. *Id*. at *8. The court observed that, because the plaintiff client's and other client's interest intertwined, the documents implicated or affected the plaintiff client's interests. *Id*. Therefore, the law firm's fiduciary relationship with the plaintiff client "lift[ed] the lid on these communications." *Id*. at *7.

According to Adams & Reese, the withheld documents refer to or relate to communications made by Adams & Reese attorneys to their in-house counsel seeking legal advice on behalf of the firm. Adams & Reese claims that Adams & Reese attorneys communicated with in-house counsel in accordance with Firm policy in order to secure legal advice regarding their professional obligations, similar to *Upjohn*.

However the documents to which Adams & Reese object discovery, do not relate to securing legal advice from in-house counsel. Communications between defendant's attorneys regarding Asset's bill payments only "cc" Adams & Reese's in-house counsel Stern.

In accordance with *Sunrise*, the seeking of legal advice by one lawyer from another lawyer inside the firm "implicates or creates a conflict of interest," the attorney-client privilege between the lawyers in the firm is vitiated. *Sunrise*, 130 F.R.D. at 597. A law firm's communication with in-house counsel is not protected by the attorney-client privilege if the communication implicates or creates a conflict between the law firm's fiduciary duties to itself and its duties to the client seeking to discover the communications. Following the reasoning in *Sunrise*, Adams & Reese's communication with in-house counsel is not protected by the attorney-client relationship because it creates a conflict between the law firm's fiduciary duties to itself and its duties to Asset.

In the instant case, the documents and communications listed in the privilege log which are related to the conflicts were created pursuant to conversations between Defendant's attorneys while Defendant represented Asset. Adams & Reese owed a fiduciary duty at that time to Asset.

In-house counsel privilege should exist in Louisiana but is not relevant to the instant case. Therefore, Asset is entitled to discovery of the documents in defendant's privilege log.

The only documents marked on the privilege log as "not related" which Magistrate Judge Roby ordered to be produced are

Log Doc. Nos. 429-432, 433-437, 452-454, and 455-457. Magistrate Judge Roby found these documents were relevant because of the relationship between Defendant, Chiron, and Jay Krassoff were relevant to Asset's allegations. (R. Doc. 149 p. 19-20). Those findings are not clearly erroneous or contrary to law.

Adams & Reese argues that communications between Adams & Reese and its other clients are protected by Rule 1.6 of the Rules of Professional Conduct. Adams & Reese contends that it is prohibited from revealing information related to another client without that client's informed consent. *Id.* at 1.6(b)(5). However, Rule 1.6 does not apply to communications between defendant's own attorneys. The documents marked "not related" do not reference Adams & Reese's in-house counsel.

Louisiana Code of Evidence Art. 506 provides that the attorney-client privilege applies to communications between the lawyer and a representative of the lawyer. Art. 506(A)(4) defines "representative of the lawyer" as a person engaged by the lawyer to assist the lawyer and the lawyer's rendition of professional legal services. The relevant documents are Log Doc. Nos. 139-140, 143, 148, 156, 157, 158, and 186. Adams & Reese argues that it is the client as to the communications and the transmission of such communications among the in-house counsel

and their representatives concerning the same client are protected. However, Magistrate Judge Roby correctly ruled that these documents do not satisfy the *Cacamo* test. The secretaries were not clients and the communications were clearly not made to obtain a legal opinion or transmit otherwise confidential or privileged information.

Asset asserts that the work product privilege does not apply to the documents because the documents were not prepared in anticipation of litigation.  Louisiana's work product rule states that a court shall not order the production of a document prepared by an adverse party in anticipation of litigation or trial unless the denial of production will unfairly prejudice the party seeking production. La. Code Civ. Proc. Ann. Art. 1424. Under no circumstances should a court order the production of documents reflecting the "mental impressions, conclusions, opinions, or theories of an attorney or an expert." *Id.* Only documents and evidence obtained in anticipation of litigation or trial are covered by the work-product doctrine. *See Board of Com'rs of New Orleans Exhibition Hall Authority v. Missouri Pacific R. Co.,* 613 So.2d 174 (La.App.4 Cir.1992).  The party seeking to avoid discovery of documents bears the burden of proving that the documents were prepared or obtained in

anticipation of litigation. *See Ogea v. Jacobs*, 344 So.2d 953 (La. 1977).

Defendant has not shown that the requested documents were created in anticipation of litigation.  Nor has Defendant shown that the communications, including those related to Asset bill payments, were produced in anticipation of litigation and that they reflect Defendant's theory of the case or litigation strategy. There was no litigation against Asset at that time. Therefore, Magistrate Judy Roby was correct in ruling that the documents[1] were not subject to the work-product privilege.

For these reasons, the Magistrate Judge's Order is **AFFIRMED**.

New Orleans, Louisiana, this 14th day of November, 2008.

                          **UNITED STATES DISTRICT JUDGE**

---

[1] See Privilege Log Doc. Nos. 131, 132, 133, 134, 137, 138, 139, 140, 143, 144, 145, 148, 156, 157, 158, 186, and 191.