UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ASSET FUNDING GROUP, LLC                          CIVIL ACTION

VERSUS                                            NO. 07-2965

ADAMS AND REESE, LLP                              SECTION B(4)

## ORDER AND REASONS

Before the Court is Defendant's Motion for Summary Judgment. (Rec. Doc. No. 131). The motion is opposed. (Rec. Doc. 142).

Defendant Adams and Reese requests summary judgment dismissing Plaintiff Asset Funding Group, LLC's ("Asset") First Amended Complaint on the grounds that Asset does not have the required standing to appear and prosecute the damage claims herein and that Asset cannot prove a loss. Defendant's argument relies mainly upon its assertion that other parties, specifically HW Burbank, LLC, Scobar Adventures, LLC, and AFG Investment Fund 2, LLC, are the real parties in interest, not Asset Funding Group, LLC.

According to FRCP 17(a)(3), joinder is an appropriate remedy to an objection regarding prosecution by the real party in interest:

> **Joinder of the Real Party in Interest.** The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

1

*Wieburg v. GTE Southwest Inc., et al*, 272 F.3d 302, 308-309 (5th Cir. 2001). Plaintiff Asset Funding Group timely filed its motion for leave to file an amended compliant joining the parties Defendant Adams and Reese alleges as the real parties in interest one day after Defendants filed the present motion for summary judgment. On December 2, 2008, after hearing oral argument on the matter, Magistrate Judge Roby granted Plaintiff Asset Funding Group, LLC's Motion for Leave to File Amended Complaint (Rec. Doc. 212). The Second Amended Complaint (Rec. Doc. 213) joins as plaintiffs to the present action HW Burbank, LLC, Scobar Adventures, LLC, and AFG Investment Fund 2, LLC, the very parties Defendant contends are the real parties in interest.

Accordingly, and after review of the pleadings and applicable law, and for the reasons that follow,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Rec. Doc. No. 131) is **DENIED**.

## BACKGROUND

In April 2005, Asset Funding Group, LLC ("Asset") purchased three properties from Evans Industries, Inc.: (1) 1255 Peters Road, Harvey, Louisiana ("Harvey Property"), (2) 10521 Sheldon Road, Houston, Texas ("Houston Property"), and (3) 3950 Highway 30, San Gabriel, Louisiana. Defendant Adams & Reese asserts that the properties were purchased by three separate entities that operate under Asset's umbrella: (1) AFG Investment Fund 2, LLC ("AFG 2"),

(2) Scobar Adventures, LLC ("Scobar"), and (3) HW Burbank, LLC. (Rec. Doc. 15-2 at 2). The San Gabriel property is not at issue in this suit.

In connection with the sale, the parties entered into a leaseback transaction under a Master Lease Agreement under which Evans leased back the Harvey Property and Houston Property from May 2005 to May 2025 for $70,000 a month. (Rec. Doc. 1; Rec. Doc. 15-5). According to the Master Lease, AFG 2 and Scobar were "tenants in common owning an undivided interest in the Texas Property." (Rec. Doc. 15-5, p. 4). Analogously, HW Burbank leased, and thus owned the Harvey Property. (Rec. Doc. 15-5, p. 4). Asset Funding Group, LLC, AFG 2, Scobar, and HW Burbank are each separate California corporations. (See Rec. Doc. 135-11). Asset was represented by two law firms during the sale and leaseback transaction, Jeffer, Mangels, Butler & Marmaro, LLP and Chaffe McCall, LLP. Adams & Reese did not represent Asset at the time of either the sale or leaseback transactions.

Approximately one year after the sale-leaseback transactions, Evans filed for Chapter 11 bankruptcy. (Rec. Doc. 6). Adams & Reese was retained as Asset's counsel in the bankruptcy proceedings in May 2006. (Rec. Doc. 6). Asset suggests that unbeknownst to it, when it hired Adams & Reese, Adams & Reese had represented and was concurrently representing Greif Industrial Packaging & Services, LLC ("Greif"), a client whose interest Asset alleges was

3

in conflict with its own due to Greif's interest in purchasing Evans' assets out of bankruptcy. Grief successfully bid on Evans's assets on September 20, 2006. (USBC Record, Docket No. 06-10370, Doc. No. 390 and No. 400 at p. 3). Adams & Reese argues that the potential conflict of interest arose when it learned in a letter dated September 6, 2006, that Greif, Inc. sought to reject the Master Lease owned by the Asset entities if Greif won the bid of Evans's assets. (Rec. Doc. 10). Subsequently, Adams & Reese notified Asset of the conflict later that month and Jeffrey Hayden, as Managing Member of Asset, signed a waiver of conflict letter dated September 14, 2006, consenting to continuing representation. (Rec. Doc. 44-2 at 5-7, Ex. C).

Upon refusing to assume the Master Lease, Greif entered into negotiations with Asset for a new lease of the Harvey and Houston properties. Adams & Reese represented Asset in the lease negotiations with Greif and a written conflict waiver from Asset was not executed until September 14, 2006. In November 2006, Asset executed two lease agreements with Greif for the Houston Property and Harvey Property for $60,000 in rent, which was $10,000 less than the monthly rent that was originally established in the Master Lease with Evans. (Rec. Doc. 29-2, Ex. 1; Rec. Doc. 29-3, Ex. 2). Asset alleges that Adams & Reese continued to represent both Asset and Greif through December 2006. (Rec. Doc. 6).

Asset filed the subject action asserting that Adams & Reese

4

failed to timely inform Asset of the conflict of interest involving Grief, failed to pursue proceeds from an insurance policy taken out by Evans on Asset's behalf for damages sustained to the Harvey Property from Hurricane Katrina, gave bad advice when it advised Asset to not pursue a third party April 2006 offer to purchase Evans' assets out of bankruptcy and to honor the Master Lease, and failed to investigate and advise Asset on the serious environmental problems at the Harvey Property and Houston Property which required remediation. (Rec. Doc. 6).

**DISCUSSION**

**A.    Summary judgment Standard**

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998).

The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id.* Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).

**B. Real Party in Interest and the Remedy of Dismissal of Claims**

The issue of whether Plaintiff Asset is the real party in interest is moot due to the ruling of Magistrate Judge Roby granting Plaintiff leave to file its amended complaint adding as additional plaintiffs HW Burbank, LLC, Scobar Adventures, LLC, and AFG Investment Fund 2, LLC, parties Defendant contends are the real parties in interest. Asset's basic claim of malpractice rests upon numerous allegations of wrongdoing. Defendant Adams & Reese has not contested Asset's standing regarding each individual alleged act of malpractice, including, for example, Asset's claims that Adams and Reese engaged in duplicative billing, incurred unnecessary charges, and overcharged Asset. As the client of Adams and Reese indicated on the engagement letter, Asset has standing to bring suit for at least some of its malpractice claims. To the extent that Adams and Reese objects to Asset's standing on particular claims, the parties Defendant alleges as the real parties in interest have been joined. Thus this Court finds it unnecessary for purposes of this motion to evaluate Asset's

standing on each and every individual allegation asserted in its First Amended Complaint, especially when Defendant has not presented its motion with such a degree of specificity but instead asserts a general argument that Asset lacks standing because its name is not on the purchase or lease agreements of the Harvey and Houston properties. Further, determination of lack of standing as to individual claims does not alleviate this Court's finding that joinder, rather than dismissal, is the proper remedy to Defendant's objection regarding standing.

Joinder is consistent with Fed. R. Civ. P. 17(a) and Fifth Circuit interpretation of Rule 17(a). Rule 17(a)(3) states:

> **Joinder of the Real Party in Interest.** The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

According to the Advisory Committee's Notes, 17(a)(3)'s provision on joinder was added "simply in the interests of justice" and "is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made." Fed. R. Civ. P. 17(a) Advisory Committee Notes, 1966 Amendment; *Wieburg v. GTE Southwest Inc., et al*, 272 F.3d 302, 308 (5th Cir. 2001). "Most courts have interpreted the last sentence of Rule 17(a) as being applicable only when the plaintiff brought

7

the action in her own name as the result of an understandable mistake, because the determination of the correct party to bring the action is difficult."[1] *Wieburg*, 272 F.3d at 308.

In *Wieburg v. GTE Southwest*, the Fifth Circuit found that the district court had abused its discretion by not considering ratification or joinder before dismissing an action for lack of standing. The plaintiff, Wieburg, filed for bankruptcy after discharge from her job. A few weeks after Wieburg's debts were discharged, she filed discrimination charges against her former employer. After learning of the discrimination charges, defendant employer moved to dismiss the complaint on the basis that the bankruptcy trustee had exclusive standing to assert the discrimination claim. Wieburg and the trustee entered into a agreement which stated that the claims were the property of the bankruptcy estate but specifically allowed the claims to be pursued in Wieburg's name. The Fifth Circuit agreed with the district court's finding that the trustee was the real party in interest; however, the Fifth Circuit remanded the case and determined that the district court should have addressed (1) whether the plaintiff

---

[1] At least one court subject to the jurisdiction of the Fifth Circuit has rejected such a strict application of Rule 17(a)(3). *See Jenkins v. Wright and Ferguson Funeral Home, et al*, 215 F.R.D. 518, 522 n.4 (S.D. Miss. May 29, 2003), in which the court expressed its reluctance to rely on the Advisory Committee Note because of its "apparent conflict" with Rule 17(a) itself. The *Jenkins* court went on to point out that "contrary to the Advisory committee Note, the language of Rule 17(a) does not state or even imply that the real party in interest must have been difficult to determine or that an understandable mistake had been made."

8

"had a reasonable time after [the defendant's] objection during which to obtain joinder, ratification, or substitution" of the real party in interest and (2) whether plaintiff's "decision to pursue the action in her own name was the result of an understandable mistake." *Id*.

Plaintiff Asset filed its motion for leave to file its amended complaint joining AFG2, Scobar, and HW Burbank one day after Defendant Adams and Reese filed the present motion objecting to Asset's standing. Thus the issue is whether Asset's "decision to pursue the action in [its] own name was the result of an understandable mistake." Cases in which the court has chosen dismissal over joinder or ratification have found lack of an understandable mistake because of deliberate, and often deceitful or at least self-serving, actions of the plaintiff. In *Wieburg* the district court found on remand that the plaintiff had not made an understandable mistake when bringing the discrimination action in her own name, but found that she had made "clear attempts to actively conceal her discrimination claims" from the bankruptcy trustee and that the mistake "was the result of a deliberate and continuous effort." *Wieburg*, 2002 WL 31156431 at *2, 3 (N.D. Tex. Sept. 26, 2002).

Similarly, in *Dolor v. Intercosmos Media Group, Inc.*, 232 F.R.D. 562, 564 (E.D. La. 2005), the court dismissed plaintiff's action after finding that the plaintiff "contributed to the

9

confusion" regarding the real party in interest due to his "untruthfulness to opposing counsel and the [c]ourt."[2] The case was based upon the alleged improper transfer of a domain name. Plaintiff argued that he had standing to bring suit as a member of the unincorporated association which plaintiff asserted owned the domain name at the time at issue. In opposition to the defendant's first motion to dismiss, plaintiff presented documentation supporting the alleged ownership by the unincorporated association. During discovery, other evidence surfaced revealing that a Georgia corporation, of which plaintiff was the president, was the owner of the domain name at the relevant time. The evidence included plaintiff's deposition, a purchase agreement entered into by the corporation and signed by plaintiff, a state court pleading, also signed by plaintiff, that stated that the corporation was the owner of the domain name, a stipulation and subsequent court order evidencing the corporation as owner, and a settlement agreement that clarified reference to the corporation as opposed to the unincorporated association.

Neither plaintiff in *Wieburg* or *Dolor* moved to substitute, join, or ratify, but instead continued to pursue actions to maintain their positions as sole plaintiffs. Wieburg, when finally forced to reveal the discrimination claim to the bankruptcy court

---

[2] Note that Defendant Adams and Reese oversimplified its reference to this case, stating only that the court "dismissed the suit with prejudice when the plaintiff improperly brought suit in his own name rather than in the name of a corporate entity controlled by the plaintiff." (Rec. Doc. 157 at 3).

10

secured an agreement with the trustee authorizing her to pursue the claim,[3] rather than moving to join or ratify. Dolor, in addition to withholding information and purposefully misleading the court and opposing counsel in the federal court action, presented the desperate argument "that he might have been lying when he made the previous representations" to the opposing party and the state court during state court proceedings. *Dolor*, 232 F.R.D. at 566 (internal quotes omitted).

Other district courts subject to the jurisdiction of the Fifth Circuit have been "lenient when an honest mistake has been made in choosing the party in whose name the action is to be filed" and denied similar motions for summary judgment and/or dismissal in cases whose facts did not involve deliberate or deceitful actions to retain sole plaintiff status. Fed. R. Civ. P. 17(a)(3), Advisory Committee Notes, 1966 Amendment; *see MC Asset Recovery, LLC v. Castex Energy, Inc., et al*, 2008 WL 2940602 (N.D. Tex. July 31, 2008)(finding that the abandonment of certain claims was the result of an understandable mistake regarding what interests were transferred from the real party in interest to plaintiff and allowing plaintiff time to ratify); *Valadez v. United Independent School District, et al*, 2008 WL 4200092 (S.D. Tex. Sept. 10,

---

[3]The Fifth Circuit found that the agreement between Wieburg and the trustee did not satisfy 17(a) because the agreement did "not give any assurance to [the defendant employer] that the principle of res judicata [would] protect it from having to defend itself against the claims once again in a later action by the [t]rustee." *Wieburg*, 272 F.3d at 307.

11

2008)(in case brought by relatives on behalf of a seventeen year old minor directing plaintiff's attorney to confer with real party in interest after he turned 18 and providing time to file an amended complaint); *Johnson v. Secretary of/and U.S. Department of Housing and Urban Development*, 544 F. Supp. 925, 939 (E.D. La. Sept. 3, 1981)(finding at trial, with the issue having never been presented by defendant and thus waived, that plaintiff was not the real party in interest and granting "plaintiff leave to amend his complaint to substitute the proper party" even though "both parties knew who the real party in interest was and what its claims were")[4]; and *Jenkins v. Wright and Ferguson Funeral Home, et al*, 215 F.R.D. 518 (S.D. Miss. May 29, 2003)(denying motion to dismiss due to timely ratification after defendant's filing of the motion to dismiss).

Although Defendant points out discrepancies in various documents regarding Asset's ownership interests in the various properties, these discrepancies are not actions put forth to deceive the Court or opposing counsel, but are evidence of a course of dealing between Plaintiff Asset and Defendant Adams and Reese.

---

[4] Defendant Adams and Reese argues this case by referring only to the sua sponte dismissal and the Fifth Circuit's ruling reversing the dismissal after finding that plaintiff was the real party in interest. (Rec. Doc. 157 at 3). As indicated above, the court did not initially dismiss upon its finding that plaintiff was not the real party in interest, but granted plaintiff time to substitute the proper party and <u>warned</u> plaintiff that the court <u>would</u> dismiss the claims sua sponte if plaintiff refused to amend his complaint to name the proper party. *Johnson*, 544 F. Supp at 939. The district court dismissed the claims only after the plaintiff refused to amend and his motion for reconsideration was denied. *Johnson*, 710 F.2d 1130, 1134 (5th Cir. 1983).

From the evidence presented, Defendant Adams and Reese was fully aware that, though only Asset was listed on the retainer letter, Adams and Reese was taking actions that were in essence for Asset and the affiliate entities. This is demonstrated repeatedly by the email and letter exchanges, the last minute substitution of the affiliate AFG2 in portions of contract documents with Greif, and through the various bankruptcy proceeding pleadings.

Asset and its affiliates are real estate developers and investors. Adams and Reese is a law firm. When Adams and Reese asked Asset who owned the properties for the purpose of what name to put on the pleadings, Asset answered AFG2 and also listed the other affiliates as having an ownership interest during the email exchanges. (Rec. Doc. 142-2 at 1,2). Additionally, after reviewing the sale and leaseback closing binders with Evans sent by Asset's former counsel, Jeffer Mangels on May 31, 2006, Adams and Reese was or should have been fully aware that the affiliates, not Asset, were the owners and landlords. (Rec. Doc. 131-10). Yet, after having specifically asked who the property owner was and reviewing documents relating to the Evans sale and leaseback, Adams and Reese did not use the name of those owners in its pleadings to the bankruptcy court, but used Asset Funding Group, LLC. (See Rec. Docs.142-2 at 6-20, 142-3 at 1-16).[5]

---

[5] The Court rejects at this stage of the proceedings the attempt to assert ease of determination of the real party in interest by pointing to the efforts of Hymel, Davis, and Patersen, LLC, counsel representing Asset in 2007, <u>to correct</u> the entity designations on the Grief

Asset, in its first amended complaint, continued the imprecise reference to Asset for the interests of Asset and the affiliates, just as Adams and Reese had done in pleadings to the bankruptcy court.

The second amended complaint appears to be a long overdue clarification, specifically including all the parties in interest who have been present in some capacity since the inception of the business relationship between Adams and Reese, Asset, and the affiliates. Such clarification appears to have been missing in both Asset's relationship with Adams and Reese and Adams and Reese's representation of Asset and its affiliates to the Bankruptcy Court and in contractual negotiations. Here the Court finds that any confusion regarding the real parties in interest is a result of the less than careful and specific actions of all parties.

Adams and Reese's argument that Asset is not a real party in interest because its name is not on sale and lease documents for the Harvey and Houston properties despite its earlier assertions to the bankruptcy court that Asset owned such is reminiscent of Delor's argument that he "'might have been lying' when he made previous representations to . . . the Florida state court" regarding ownership of the domain name. *Delor*, 232 F.R.D. at 566.

---

leases which listed Asset as the landlord but handwrote AFG2 on the signature page. (See Rec. Docs. 157-2 at 18-28 and 131-14 at 1, 2, 19, 20).

Just as the court in *Delor*, this Court rejects the apparent argument that earlier representation before the bankruptcy court of interests of all affiliates and Asset under Asset's name only might have been incorrect then but strict representation of interests is correct now.

The district court in *Wieburg* briefly evaluated the difficulty in determining the real party in interest and found that no such difficulty existed because plaintiff "should have known that the [t]rustee was the proper party in interest." *Wieburg*, 2002 WL 31156431 at *3. The court found that plaintiff was "on notice of this legal fact" and referenced plaintiff's request for a stay of the discrimination proceedings after re-opening of the bankruptcy case and the bankruptcy court's subsequent finding "that the trustee [was] authorized to settle and compromise the discrimination proceeding." *Id*.

The interests involved in the present action are not as clear cut as those associated with the *Wieburg* bankruptcy. The present case involves multiple interrelated interests of multiple interrelated business entities. When representing Asset, Adams and Reese did not separate the interests of all affiliate entities but agreed to represent Asset, knowing that these other entities, not Asset, were listed as leaseholders on the referenced property agreements. Therefore, the Court finds that some measure of difficulty exists in determining which party owns which specific

15

interest, especially when Adams and Reese took actions affecting the interests of all Plaintiffs when its engagement letter listed only Asset and only Asset was billed for and paid for the services of Adams and Reese.[6]

The Court finds that Plaintiff Asset's failure to initially include AFG2, Scobar, and HW Burbank was the result of Asset's excusable mistake. Additionally, unlike in *Delor* and *Wieburg*, Plaintiff Asset took immediate action after the filing of the present motion for summary judgment, which embodied Defendant's objection to Asset as the real party in interest, to join the parties Defendant alleged as the real parties in interest.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Rec. Doc. No. 131) is **DENIED**.

New Orleans, Louisiana, this 17th day of March, 2009.

UNITED STATES DISTRICT JUDGE

---

[6]The Court is unconvinced by Defendant Adams and Reese's argument that the reference in the Conflicts clause of the engagement letter that Asset and not any of its affiliated corporations was the client of Adams and Reese negates the existence of any third party beneficiary or otherwise provides any useful evidence regarding standing. (See Rec. Docs. 178-2, 192). In light of the actions of Adams and Reese in representing a client who was not the owner of a property in a bankruptcy proceedings and the myriad imprecise references to Asset in place of one of the affiliates, the Court finds that this Conflicts clause provision is limited to the purposes of checking for future conflicts as indicated in the clause.