UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


ASSET FUNDING GROUP, L.L.C.                CIVIL ACTION

V.                                         No. 07-2965

ADAMS & REESE, L.L.P.                      SECTION "B"(4)


**ORDER AND REASON**

Before the Court is Defendant's Motion for Summary Judgment. (Rec. Doc. No. 353). The motion is opposed. (Rec. Doc. 380).

Defendant Adams and Reese (A&R) requests summary judgment dismissing Plaintiff Asset Funding Group, LLC ("Asset")on the grounds that, as a matter of law, Plaintiffs cannot prove an essential element of the claims in this action: causation of loss. Defendant's argument relies mainly upon its assertion that because Asset settled its claims they are barred from asserting a malpractice action. For the following reasons, **IT IS ORDERED** that the instant motion is **DENIED.**

**Facts of the Case:**

The Court is already very familiar with the background allegations. The parties are referred to this Court's Ruling on the motion for Summary Judgment filed by Defendant Adams & Reese

1

(Rec. Doc. No. 275). However, in brief, and as relevant to this motion Asset contends that A&R represented Asset in the bankruptcy matter *In re: Evans Industries, Inc., No. 06-10370* on the docket of the United States Bankruptcy Court for the Eastern District of Louisiana.  Asset alleges acts of professional negligence and the existence of a non-waivable conflict of interest on the part of A&R which, according to Asset caused a loss. Specifically, the Second Amended Complaint Alleges that A&R failed to timely inform Asset of the conflict of interest involving Grief, received consent for an non-waivable conflict of interest, failed to pursue proceeds from an insurance policy taken out by Evans on Asset's behalf for damages sustained to the Harvey Property from Hurricane Katrina, gave bad advice when it advised Asset to not pursue a third party April 2006 offer to purchase Evans' assets out of bankruptcy and to honor the Master Lease, and failed to investigate and advise Asset on the serious environmental problems at the Harvey Property and Houston Property which required remediation (Rec. Doc. No. 213).

  A&R contends that Asset voluntarily settled all claims forming the basis of this motion.  A&R argues that Louisiana Courts routinely dismiss legal malpractice claims on summary judgment when the plaintiff has settled the claim involved in the underlying action because the plaintiff cannot prove causation of a loss, an essential element of a legal malpractice claim.

  A&R contends that the Rejection and the Environmental

claim were settled on October 17, 2009 as part of the Evans Amended Plan of Reorganization.[1] A&R argues that the settlement gave Asset an absolute right to withdraw from the entire settlement if it was not "satisfied" with the environmental condition of the real estate, and despite the fact that its new lease arrangements with Grief were not in place, Asset made the business decision to take the money and settle –$300,000.00 paid to it by Evans bankruptcy estate, and an additional $250,000.00 ultimately paid to it by Grief as an up-front inducement for AFG to enter into new leases with Grief. (A&R motion p. 7). A&R further states that the provisions of the Amended Plan specifically reserved all of Asset's rights against Lexington and that Asset's arguments to the contrary are baseless. A&R contends that Asset sued Lexington for Hurricane Katrina property damages which is inclusive of the claim in this instant matter and just days before the January 26, 2009 trial, Asset settled with Lexington.[2] The January 28, 2009 settlement fully settled all claims Asset had against Lexington for property damage insurance proceeds relating to the Harvey property. A&R contends the amount was substantial and covered all manners of claims against Lexington including the claims which Asset reserved under the Amended Plan for future litigation.

---

[1] Judge Brown approved the settlement and confirmed the amended plan by order dated October 24, 2006 in *In Re: Evans Industries, Inc.,* No 06-10370, USBC, E.D.La., Rec. Doc. No. 502.

[2] *Evans Industries, Inc. V. Lexington Insurance Company,* E.D.La. Rec. Doc No. 5.

A&R further argues that when a malpractice Plaintiff settles the underlying matter, Louisiana law precludes the malpractice claim because of the inherently speculative nature of the loss. A&R asserts that Asset piles speculation upon speculation as the sole bases of Asset's claims. For example, A&R contends that how the bankruptcy judge would have ruled had A&R done what Asset alleges it should have done are speculative and thus Asset cannot prove what damage it suffered, if any.

Asset argues that the malpractice in this case stems from Defendant's breach of fiduciary duties, presence of an unwaivable conflict, and actions detrimental to Asset in Defendant's representation of Asset in the Plan confirmation process, resulting in the provisions of the plan itself. Asset further argues, that the premise of A&R's motion is unsound as the law they seek to apply is wholly inapplicable.

Asset next argues that the terms of the plan establish that A&R failed to properly assert both lease rejection and environmental claims known to it. Asset alleges that the evidence submitted by Defendant shows that Asset's alleged acceptance to the transaction was simply based upon what it had been informed of as of that time, the advice given by Defendant, and that the plan had

not been fully explained to Asset.[3] Specifically, Asset argues that the day before the confirmation hearing of the settlement plan, Mr. Duck informed his associate Mr. Cerise, "We need to file a motion to estimate our claim and to reserve right to change our ballot to a negative vote to the plan if the plan is amended to reject the leases." Deposition of John Duck, Exhibit B, p. 231, Exhibit 38. Mr. Duck then testified, that he did not file such a motion, despite knowing that Asset had a $2.4-$2.6 million rejection damages claim. *Id.* at 231-33.

In addition, Asset argues that the night before the confirmation hearing, Mr. Cerise also emailed Mr. Duck and informed him that A&R need to "verify that EPA/LDEQ have filed a POC (proof of claim) and that we are free to assert claims related to the environmental POC's and/or intervene, none of which was done. Moreover, Asset contends that the Plan was contingent upon the execution of a new lease between Asset and Greif, however, A&R's conflicted representation resulted in the unfavorable leases, and resulted in Defendant's failure to timely file claims related to the environmental condition of the properties.

Asset also contends that the Plan allowed Asset to withdraw prior to it becoming final if Asset was not satisfied with

---

[3] *See* Deposition of Jeffery Hayden attached in globo as Exhibit A, p. 206-07 (where Mr. Duck Stated that he hired Mr Duck and that Mr. Duck told him what he should do; and that he "had explained to Mr. Duck that he agreed with his counsel on numerous occasions and that whatever he told me to do in this transaction I would be doing so because I felt I was in good hands."

5

the environmental condition of the properties. However, Asset contends that because of the conflict and breaches of fiduciary duties A&R did not keep Asset abreast of the environmental problems with the condition of the properties. In fact, during the period in which Asset had the right to assert its environmental claims and to withdraw its agreement to the Plan, Ms. Warner wrote to Mr. Duck, "I anticipate that ERM is going to tell Jeff that based on the data collected thus far the sites issues are relatively minor." See Deposition of John Duck, pp. 381-82. Mr. Hayden also testified that Ms. Warner told him that she had visited the properties and that there were no environmental problems. See Deposition of Hayden, p. 237.

Asset further contends that at the very least, triable issues of material fact exist as to whether A&R's conflict of interest, acts, and omissions constituted a breach of fiduciary duty and legal malpractice, warranting the imposition of damages. Asset argues that their expert, Nancy Rapoport, has concluded that the conflict waiver in this case asked Asset to approve a nonconsentable waiver. *See* Declaration of Nancy Rapoport, attached as Exhibit D, Paragraph 5. Asset further contends, that their expert has also found that a reasonable bankruptcy lawyer should have known that Asset's interest in the leases with Evans were likely to diverge from Greif's interests in those same leases. *Id.* In addition, Asset contends that their Expert also concluded that

even if A&R could possibly have been reasonable to request a waiver, the amount of detail necessary to disclose to Asset to give it sufficient information to determine whether to consent to simultaneous representation of Greif would be far more than the actual waiver letter provided in this case. *See Id.*

Asset, finally argues that notwithstanding the non-waivable conflict, Defendant failed to exercise reasonable care and caused Asset a loss and damages by failing to assert lease rejection damages, failing to assert environmental claims of which it was fully aware, and failing to file a motion to estimate these claims, which it acknowledged it should do.

**Law and Analysis**

**I. Standard of Review for Summary Judgment**

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving

party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id.* Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).

**II. Malpractice Actions**

Under Louisiana law, to establish a claim for legal malpractice, a plaintiff must prove: (1) the existence of an attorney-client relationship; (2) negligent representation by the attorney; and (3) loss caused by that negligence. *Costello v. Hardy,* 864 So.2d 129, 138 (La. 2004), *citing* Finkelstein v. Collier, 636 So.2d 1053, 1058 (La. App. 5th Cir. 1994); Barnett v. Sethi, 608 So.2d 1011, 1014 (La. App. 4th Cir. 1992), writs denied, 613 So.2d 993, 994 (La. 1993).

As the Louisiana Supreme Court has stated: "An attorney is obligated to exercise at least that degree of care, skill, and diligence which is exercised by prudent practicing attorneys in his locality. He is not required to exercise perfect judgment in every instance." Ramp v. St. Paul Fire & Marine Ins. Co., 263 La. 774,

269 So.2d 239, 244 (La. 1972).

To succeed on a negligence-based malpractice claim, a plaintiff must demonstrate the attorney failed to exercise the degree of care, skill, and diligence that would be exercised by a prudent practicing attorney in his locality. *See Nelson v. Waldrup, 565 So.2d 1078, 1079 (La. App. 4th Cir. 1990),* citing Ramp v. St. Paul Fire & Marine Ins. Co., 263 La. 774, 269 So.2d 239, 244 (La. 1972).

A&R in arguendo assumes that all that Plaintiff can prove are the first two elements but that Asset can not prove the third element, that any negligence of A&R was the "but for" cause of the alleged loss.

A&R contends that Asset voluntarily settled all claims forming the basis of this motion. A&R asserts that when a malpractice Plaintiff settles the underlying matter, Louisiana law precludes the malpractice claim because of the inherently speculative nature of the loss. A&R asserts that Asset piles speculation upon speculation as the sole bases of Asset's claims. For example, A&R contends that how the bankruptcy judge would have ruled had A&R done what Asset alleges it should have done are speculative and thus Asset cannot prove what damages it has suffered, if any.

A&R points this Court to the *Costello* case in which the Plaintiff sued an attorney for malpractice alleging negligence in

the drafting of a will which deprived the Plaintiff of certain lifetime benefits and caused Plaintiff emotional distress. *Costello v. Hardy et al,* 864 So.2d 129, 139 (La. 2004). However, Plaintiff also had filed an action to challenge the will and settled this action with the succession. *Id.* Summary judgement was granted in favor of the attorney. *Id.*

A&R also argues that this case is similar to *Couture v. Guillory,* the Plaintiff entered into a settlement in the underlying matter, an employment action against the St. Bernard Parish School Board, as to certain claims. 713 So. 2d 528, 529-30 (La. App. 4th Cir. 1998). The remaining claims proceeded to trial where the plaintiffs prevailed. *Id.* On appeal, the trial court's judgement was reversed as to the tried claims; however, the plaintiff's attorney did not apply for a writ from this reversal, which prompted the plaintiff-client to file a malpractice action. *Id.* at 529.

The Fourth Circuit rejected this argument finding that in a legal malpractice action, the only claims for damages that could be asserted by the client against his former attorneys were those claims that had not been discharged by the client in his underlying action against his former employer; the terms of the compromise agreement provided that the client had agreed to discharge all claims that he had against his former employer except his right to seek reinstatement and judicial reversal of the employer's actions,

and the terms of the agreement were clear and unambiguous. *Id*. at 531.

This Court finds that these cases and other similar to the cases above are inapposite to the instant matter. First, none of the cases cited by Defendant involved claims based upon the Defendant attorney's handling of the settlement agreement as in this case. Second, none of the cases cited also involve an attorney's alleged conflicted representation of both sides to a settlement agreement.

In fact, the Louisiana Fourth Circuit Court of Appeal stated that "our interpretation of the [Louisiana] jurisprudence acknowledges a cause of action for legal malpractice based on improper and negligent settlement of claims...." Gibson v. Herman, Herman, Katz, and Cotlar, L.L.P., 927 So.2d 1178, 1184 (La.App. 4 Cir. 2006). In this case, the court found that the clients failed to establish a prime facie case of legal malpractice because Plaintiffs relied on another practicing attorney's affidavit to allege the suffered damages due to the negligently handled settlement. *Id.* However, in the affidavit the attorney stated that his opinions do not conclude that the Plaintiffs are entitled to damages. *Id.* That is not what has occurred in this case. Asset and A&R both have depositions, and expert testimony that create a triable issue of fact as to whether or not Asset suffered a loss as a result of alleged negligent conduct on A&R's part in

11

representing Asset.

In addition, in *Schlesinger v. Herzog*, 672 So.2d 701 (La. App. 4th Cir. 1996), the court stated:

> It is customary to expect one's counsel to aggressively assert one's right in preference to those of another party. However, where an attorney discloses a conflict he does so to let his client know that this may not be a realistic expectation under the circumstances because the attorney may lose his objectivity without intending to do so and without even realizing it.... Therefore, a disclosure of a purpose normally expected... a waiver by a client of objection to a conflict is not a waiver of that client's right to complain about the intentional infliction of harm by the attorney or the "obvious negligence of the attorney to prevent such harm.

In this case, Asset states that A&R's conflict of interest amounted to negligence in handling the settlement by putting their own self interests above Assets interests. While, A&R claims that Asset waived the conflict, Asset's expert, Nancy Rapoport opines that A&R should have asserted certain lease rejection damages and environmental claims on behalf of Asset, causing damages to Asset. While the latter information appears speculative and weak, especially on causation and damages, we prefer to err out of an abundance of caution to hear the trial evidence rather than making a premature or summary disposition.

In *Johnson v. Culotta,* 874 So.2d, the court found that genuine issue of material fact regarding potential conflict of interest by law firm in representing both owner and manager of software precluded summary judgment on legal malpractice claim. 874 So.2d 942, 943 (La. App. 4th Cir. 2004). While the Lawyers in

the latter case did not obtain a waiver as the lawyers did in the case at bar, the *Johnson* court reversed the trial court's grant of summary judgement because they found that the Plaintiff must be given the opportunity to prove certain of their allegations in a trial of this case. *Id.* at 950. In *Bonnette v. Conoco, Inc.,* 837 So.2d 1219, 1240 (La. 2003), the Louisiana Supreme Court stated that the "principle that questions of credibility are for the trier of fact to resolve applies to the evaluation of expert testimony..."

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **DENIED**.

New Orleans, Louisiana, this   5th   day of  November , 2009.

UNITED STATES DISTRICT JUDGE