**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

**ASSET FUNDING GROUP, L.L.C.**                    **CIVIL ACTION**

**V.**                                              **No. 07-2965**

**ADAMS & REESE, L.L.P.**                          **SECTION "B"(4)**


<u>**ORDER AND REASONS**</u>

Before the Court is Defendant Adams & Reese's Motion for Partial Summary Judgment and Motion In Limine(Rec. Doc. No. 388). A&R's partial motion for summary judgment and motion in limine alleges that Plaintiff, Asset "gave informed consents to concurrent representation of Greif, Entergy, and Chiron, i.e. waived any conflict, and that the consents were confirmed in writing in accordance with rule 1.7 of the Louisiana Rules of Professional Conduct." Defendant also contends that the conflict was consentable. This motion is opposed (Rec. Doc. No. 445). For reasons discussed during oral argument and for the following reasons, this instant motion is **Granted** in part to all of Assets claims dealing with the alleged conflicts in A&R representing Entergy and Chiron and **DENIED** in part regarding the informed consent relative to the claims dealing with "Greif" interests.

**Facts of the Case:**

The Court is already very familiar with the background of

1

this case. The relevant background facts are set forth in this Court's separate Order and Reasons (Rec. Doc. Nos. 511, 275).

**Law and Analysis:**

**I. Standard of Review for Summary Judgment**

Summary judgment is available if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. of Civ. P. 56. The moving party has an initial burden of demonstrating the absence of a genuine issue of material fact. *Imperial Trading Co., Inc. v. Travelers Prop. Cas. Co. of Am.*, 638 F.Supp.2d 692, 696 (E.D. La. 2009); *See also*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Summary judgment is improper if a disputed material fact exists, which is defined as a fact that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Once the moving party establishes that insufficient evidence is within the record to support an essential element of the opposing party's claim, the burden shifts to the non-moving party. 638 F.Supp.2d at 693-94. The non-movant must then demonstrate that an issue of fact does exist, by identifying specific facts on the record or by submitting additional evidence. *Id.* at 694. Summary judgment is appropriate if "no reasonable trier of fact could find

for the nonmoving party." *Id.* at 693.

## A. Conflict of Interest and Informed Consent Under Rule 1.7(b)

The Louisiana Rules of Professional Conduct Govern.

Louisiana Revised Statute 37, Ch. 4, Art. 16 states:

**Rule 1.7. Conflict of Interest: Current Clients**
(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing.

In this case, Asset's principal argument in this matter involves the alleged conflict which arose because of the concurrent representation of Greif. In the September 14, 2006

3

letter Asset confirmed its consent to A&R's concurrent representation of Asset and Greif with the limitation that "another lawyer alone would represent "Greif" on the lease issues that give rise to the conflict."  Asset's position is that the concurrent conflict involving Greif was "non-consentable" and not fully informed.  Asset relies upon the reports of its expert, Nancy B. Rapoport, who has asserted that the conflict was non-consentable.

The court in *Soderquist v. Kramer,* 595 So.2d 825, 830 (La. App. 2 Cir. 1992) stated as a general principle, all transactions between client and lawyer should be fair and reasonable to the client. Furthermore, a lawyer may not exploit his representation of a client or information relating to the representation to the client's disadvantage.  *Id.;See* Louisiana Bank & Trust Co. v. Anderson, 526 So.2d 1386 (La. App. 3d Cir. 1988).

Asset alleges that despite the statement that another lawyer would alone represent Grief on the lease issues that give rise to the conflict, A&R did in fact represent Grief with respect to lease issues.  Specifically, Asset argues that it is undisputed that A&R continued to represent Greif on environmental due diligence, securing information adverse to Asset, which affected Greif's decisions on what subsequent lease arrangements to enter into with Asset.  Such arrangements included leaving

4

environmental responsibility on Asset, and carving out certain buildings from the lease. *See* deposition of John Duck, Exhibit D, p. 357-58 and Exhibit 72. Defendant's internal emails demonstrate that it was aware of potential conflict issues raised by rendering advice to Greif:

> "Are we representing Greif and AFG on environmental issues? This seems to me to be a problem. Once we get leases signed I think we will be ok but don't think we can represent both."

A&R believed that it could provide competent and diligent representation to Asset under Rule 1.7(b)(1) of Louisiana's Rules of Professional Conduct. A&R argues that John Duck is unquestionably competent to represent parties in bankruptcy proceedings. He has over 28 years of experience and has concentrated in bankruptcy.

Asset argues that Louisiana's Rules of Professional Conduct requires, that under Rule 1.7, the lawyer must reasonably believe that the conflict is not of such a nature that his client's representation will suffer. *Schlesinger v. Herzog,* 95-1127 (La App. 4 Cir. 4/3/96), 672 So.2d 701, 711. Asset maintains that A&R's concurrent representation of Asset and Greif occurred without informed consent from Asset.

In *Schlesinger v. Herzog*, 672 So.2d 701 (La. App. 4th Cir. 1996),stated:

> It is customary to expect one's counsel to aggressively assert one's right in preference to those of another party.

However, where an attorney discloses a conflict he does so to let his client know that this may not be a realistic expectation under the circumstances because the attorney may lose his objectivity without intending to do so and without even realizing it.... Therefore, a disclosure of a purpose normally expected... a waiver by a client of objection to a conflict is not a waiver of that client's right to complain about the intentional infliction of harm by the attorney or the "obvious negligence of the attorney to prevent such harm.

In this case, Asset states that A&R's conflict of interest amounted to negligence in handling the settlement by putting their own self interests above Assets interests. While, A&R claims that Asset waived the conflict, Asset's expert, Nancy Rapoport opines that the conflict waiver caused Asset damages because A&R did not assert certain lease rejection damages and environmental claims on behalf of Asset.

In *Johnson v. Culotta*, the court found that genuine issue of material fact regarding potential conflict of interest by law firm in representing both owner and manager of software precluded summary judgment on legal malpractice claim. 874 So.2d 942, 943 (La. App. 4th Cir. 2004). While the Lawyers in *Johnson* did not obtain a waiver as the lawyers did in the case at bar, the *Johnson* court reversed the trial court's grant of summary judgement because they found that the Plaintiff must be given the opportunity to prove certain of their allegations in a trial of this case. *Id.* at 950.

A&R argues that Asset never had a claim against Greif in the Evans bankruptcy proceeding. The representation did not involve the assertion of any claim by one client against another client. Asset argues that A&R's representation should have involved assertion of a claim by Asset against Grief. A&R was serving as counsel for American Flange and Manufacturing, Greif, and Entergy. Asset contends that this meant that it could have objected to the Greif bid as procured through improper means. However, Asset argues, that the objection did not occur because A&R was concurrently representing Asset and Greif.

Moreover, Asset contends it did not give "informed" consent to A&R's concurrent representation of Greif. While the case law is scarce the majority of cases find that "informed consent" requires that the attorney give "full disclosure of the implications of the common representation and the advantages and risks involved." *In re Hoffman,* 2003-2499 (La. 9/9/04), 883 So.2d 425, 432. The attorney must discuss with the clients the "nature of their potentially differing interests and the risks of the joint representation. Asset argues that the most A&R can point to in an attempt to prove that Asset's consent was informed is the conflict letter and Mr. Duck's statement that, in speaking to Mr. Hayden about the Conflict, "he walked him through it." Asset's Mr. Hayden denies that assertion.

7

## II. **Entergy and Chiron Conflict:**

The representation of Entergy was disclosed in the May 3, 2006 engagement letter. As noted in the letter, Hayden confirmed that he read and understood this "conflicts" portion of the letter. Hayden Dep. At pp. 113-18. A&R contends that the Second Amended Complaint in paragraph 43 alleges that A&R had a duty to disclose that Entergy served on the creditors' committee in the Evans Bankruptcy and that, as a result, Greif, though its counsel had access to the Creditor's Committee's confidential proprietary information. However, A&R cites undisputed evidence that the creditor's committee was not appointed until May 12, 2006, after the May 3, 2006 letter was signed. A&R also shows that Asset and Entergy were not adverse and there was no risk that the representation of Asset would be limited by the representation of Entergy on critical vendor issues for a short time.

Asset argues that Entergy served on the Creditor's Committee throughout the tenure of the bankruptcy case. As a result, Asset contends that A&R had access to the Creditor's Committee's confidential proprietary information. This arrangement provided Greif, through defendant, potential access to the same information. Asset further contends that Greif could then use the information to secure an advantage in the bidding process by gaining knowledge of details about competing bids and affecting

8

the decision making process of the Creditors Committee, through Entergy. *See* Deposition of John Duck, p. 119. Asset also argues that the consent was not informed. *See* above arguments regarding informed consent.

In September 2006, both Asset and Chrion asked A&R to draft an engagement letter between the two because Asset wished to retain Chiron for the purposes of marketing for sale certain real property owned by Asset. A&R argues that as with the other letters, this letter also speaks for itself. A&R contends that they fully explained the issue,–representation of Chiron in unrelated matters.

Asset argues that what A&R knew or should have known, and failed to disclose to Asset, was that Chiron's compensation in representing the Creditors Committee was largely tied to securing a bid greater than the existing bid presented prior to Chiron's retention. Asset contends that this shows that Chiron had a vested economic interest in securing a bid which could have, and ended up, displacing the previous bidder, which had contemplated assumption and assignment of the master lease which was of paramount importance to Asset. Asset argues that this is not an "unrelated matter" as the September 12, 2006 letter states.

The Court finds that Summary Judgment shall be granted dismissing claims relating to alleged conflicts in representing Entergy and Chiron due to unsupported speculative conclusions,

9

undisputed evidence of no material conflicts during the relevant time period and dismissing claims that conflict was "nonconsentable" because Louisiana Rule of Professional Conduct 1.7(b) expressly allows for conflict waivers under specific pre-conditions.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Partial Summary Judgment is **Granted** with all claims relating to the alleged conflict in A&R representing Entergy and Chiron and **DENIED** regarding the informed consent relative to claims dealing with "Greif" interests.

New Orleans, Louisiana, this 4th day of November, 2009.

_____
UNITED STATES DISTRICT JUDGE